NATIONAL TREASURY EMPLOYEES UNION, Petitioner,

v.

FEDERAL LABOR RELATIONS AUTHORITY, Respondent.

No. 83–1054.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 21, 1983.

Decided Nov. 22, 1983.

Gregory O'Duden, Washington, D.C., with whom Robert M. Tobias and Lois G. Williams, Washington, D.C., were on brief, for petitioner.

Matthew J. Wheeler, Federal Labor Relations Authority, Washington, D.C., with whom Steven H. Svartz, Acting Sol., Washington, D.C., was on brief, for respondent.

Before EDWARDS and GINSBURG, Circuit Judges, and McGOWAN, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

This case is an appeal from a decision and order of the Federal Labor Relations Authority ("FLRA" or "Authority") determining that the National Treasury Employees Union ("NTEU" or "Union") violated its statutory duty of fair representation by denying attorney representation to bargaining unit employees who are not Union members. Under a policy adopted and implemented by the Union, only Union members are furnished assistance of counsel, in addition to representation by local chapter officials and Union stewards, with respect to grievances or other matters affecting unit employees in the context of collective bargaining. Nonmembers, however, are *limited* to representation by chapter officials and stewards, and are expressly denied the assistance of counsel in matters pertaining to collective bargaining. The FLRA found this policy, and its concomitant practices and effects, to be an unfair labor practice. For the reasons stated below, we affirm the decision of the Authority.

## I. BACKGROUND

### A. *The Statutory Provisions*

. This case is governed by the Federal Service Labor-Management Relations Statute (the "Statute").[1] Section 7114(a)(1) of the Statute imposes a duty of fair representation on unions in the federal sector: .

A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents *without discrimination and without regard to labor organization membership.*[2]

A union's failure or refusal to comply with this statutory duty constitutes an unfair labor practice in violation of section 7116(b)(8).[3] Such noncompliance additionally constitutes an unfair labor practice in violation of section 7116(b)(1)[4] if the un-

---

1. 5 U.S.C. §§ 7101–7135 (1982) (enacted as title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, § 701, 92 Stat. 1111, 1191–1216).

2. *Id.* § 7114(a)(1) (emphasis added).

3. Section 7116(b)(8) provides that it shall be an unfair labor practice for a labor organization "to otherwise fail or refuse to comply with any provision of this chapter." *Id.* § 7116(b)(8).

4. Section 7116(b)(1) provides that it shall be an unfair labor practice for a labor organization "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter." *Id.* § 7116(b)(1).

ion's conduct interferes with, restrains, or coerces any employee in the exercise of his or her right under section 7102 to refrain from joining a union.[5]

### B. The Facts

The National Treasury Employees Union represents approximately 120,000 bargaining unit employees throughout the federal government, including employees at the United States Customs Service and the United States Nuclear Regulatory Commission. About 65,000 of the represented employees are dues paying Union members. The Union employs 40 National Office attorneys whose duties include providing direct representation to bargaining unit employees in arbitration and other work-related proceedings. However, these attorneys are unable to handle every problem of every bargaining unit employee. Therefore, alternative representation often is provided by local chapter officers and stewards.

In 1978, by means of newsletters and notices, the Union advised bargaining unit employees that henceforth it would be Union policy to provide attorney representation only to Union members. Under the announced policy, nonmembers were limited to representation by shop stewards. The Federal Labor Relations Authority subsequently held that the Union rule regarding attorney representation was inconsistent with provisions of the then-applicable Executive Order 11,491, as amended,[6] which required bargaining agents to represent " 'the interests of all employees in the unit without discrimination and without regard to labor organization membership;' "[7] accord-

ingly, the FLRA ruled that the Union's conduct improperly interfered with, restrained and coerced nonunion employees in the exercise of their right to refrain from joining NTEU.[8]

In response, on September 7, 1979, the President of NTEU sent a memorandum to all NTEU Chapter Presidents stating that the Union would not change its policy of providing attorney representation only to members. The President explained in the memorandum that:

> The Authority based its decision on an interpretation of Executive Order 11491, as amended. Although I firmly believe the decision is wrong, we will not appeal it because it is based on something no longer in existence.
>
> However, the fact that we are not appealing the decision does not mean NTEU policy has changed. *NTEU will not supply attorneys to non-members to help in the representational efforts.* If a new charge is filed against NTEU based on the new language in the Civil Service Reform Act, we will continue to resist it.[9]

Copies of this memorandum were posted on Union bulletin boards in Customs Region VII, Los Angeles, California, and in Customs Region IX, International Falls, Minnesota. Furthermore, the Union implemented this declared policy at the Nuclear Regulatory Commission, where attorneys were provided to Union members but not to nonmembers in connection with proposed removal actions.

---

**5.** Section 7102 provides in part that: "Each employee shall have the right to form, join, or assist any labor organization, *or to refrain from any such activity,* freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right." *Id.* § 7102 (emphasis added).

**6.** Exec. Order No. 11,491, as amended, *reprinted in* 5 U.S.C. § 7101 app. at 793–98 (1982).

**7.** *National Treasury Employees Union (NTEU), Chapter 202,* 1 F.L.R.A. No. 104, at 914 (1979) (quoting § 10(e) of Exec. Order No. 11,491, as amended).

**8.** *Id.* Section 1(a) of Exec. Order No. 11,491, as amended, provides in part that "[e]ach employee of the executive branch of the Federal Government has the right, freely and without fear of penalty or reprisal, to form, join, and assist a labor organization or to refrain from any such activity, and each employee shall be protected in the exercise of this right." Exec. Order No. 11,491, as amended, § 1(a), *reprinted in* 5 U.S.C. § 7101 app. at 793 (1982).

**9.** "Memorandum to NTEU Chapter Presidents *Re* NTEU Chapters 202, 123 and 165, 1 FLRA No. 104 (1979)" (Sept. 7, 1979) (emphasis added), *reprinted in* I Joint Appendix ("J.A.") 33.

## C. The Administrative Proceedings

On October 11, 1979, the Customs Service filed an unfair labor practice charge against the Union based on the Union's "disparate and discriminatory standards of representation based solely on whether or not employees are members of [NTEU]." [10] On February 21, 1980, the Nuclear Regulatory Commission filed a similar charge. The FLRA General Counsel subsequently issued complaints. Following a hearing on the consolidated complaints, the FLRA Administrative Law Judge ("ALJ") found that the Union had engaged in and was engaging in an unfair labor practice.[11]

The Union asserted at the hearing that Union membership was only one of several factors that it considered in determining whether to provide attorney representation. The ALJ found, however, that the Union treated this factor as dispositive, and would not provide attorney representation to nonmembers even if the other alleged factors were satisfied. The ALJ noted that the record failed to show that the Union had ever provided attorney representation to a nonmember after September 7, 1979. Nevertheless, the ALJ went on to hold that even if the Union were to grant special dispensation and in selected cases provide attorney representation to nonmembers, its policy of disparate treatment still would violate sections 7114(a)(1) and 7116(b)(1) and (b)(8) of the Statute.

The Union filed exceptions to the ALJ's decision. On November 23, 1982, the FLRA affirmed the ALJ's decision, adopting the ALJ's findings, conclusions and recommendations with slight modifications.[12] In particular, the FLRA adopted the ALJ's finding that the Union failed to meet its obligation under section 7114(a)(1) to represent the interests of all· unit employees without discrimination and without regard to labor organization membership. The FLRA also agreed with the ALJ that the Union inter-

fered with the employees' right under section 7102 to refrain from joining a labor organization. Accordingly, the FLRA determined that the Union had committed an unfair labor practice in violation of sections 7116(b)(1) and (b)(8). The FLRA ordered the Union to cease and desist from (1) affording differing standards of employee representation to employees in units of exclusive recognition solely on the basis of whether such employees are members of NTEU; (2) interfering with, restraining, or coercing unit employees in the exercise of their right to refrain from joining, freely and without fear of penalty or reprisal, NTEU or any other labor organization; and (3) in any like or related manner interfering with, restraining, or coercing unit employees in the exercise of their rights assured by the Statute. In addition, the FLRA ordered the Union to represent all employees in units of exclusive recognition without discrimination and without regard to membership in NTEU, and to publish notice to employees that it would act in conformance to the above orders.

## II. ANALYSIS

### A.

■ Our review of FLRA orders is governed by section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706 (1982). *See* 5 U.S.C. § 7123(c) (1982). Thus, we must accept the findings and conclusions of the FLRA if they are supported by substantial evidence, *see id.* §§ 706(2)(E), 7123(c); are not arbitrary, capricious, or an abuse of discretion; and are otherwise in accordance with law, *see id.* § 706(2)(A). We recognize that Congress entrusted the FLRA with broad powers and duties to administer the Federal Service Labor-Management Relations Statute and to provide expertise in establishing policies relating to matters under the Statute. *See id.* § 7105(a)(1). Al-

---

**10.** Charge Against Labor Organization or Its Agents, Case No. 3–CO–26 (Oct. 11, 1979), *reprinted in* I J.A. 28.

**11.** *National Treasury Employees Union,* 10 F.L. R.A. 525 (1981) (FLRA Office of Administrative

Law Judges, Case No. 3–CO–26 & Case No. 3–CO–37).

**12.** *National Treasury Employees Union,* 10 F.L. R.A. No. 91 (1982).

though a reviewing court is not bound to adopt a FLRA interpretation of the Statute, such an interpretation is entitled to some deference if reasonable and coherent. *See American Federation of Government Employees, Locals 225, 1504, and 3723 v. FLRA,* 712 F.2d 640, 643 (D.C.Cir.1983).

■ In the present case, the FLRA concluded that, by implementing a members-only attorney representation policy, NTEU breached its duty under section 7114(a)(1), interfered with employees' rights under section 7102, and thus committed an unfair labor practice in violation of sections 7116(b)(1) and (b)(8). We find that these conclusions are not only reasonable, but are compelled by the plain language of the Statute. Section 7114(a)(1), in particular, requires the Union to represent all bargaining unit employees "without discrimination and without regard to labor organization membership" and means exactly what it says. Furthermore, there is absolutely nothing in the legislative history or in any case law construing the Statute to support the Union position.

## B.

The Union attempts to defend its conduct by interpreting section 7114(a)(1) to codify the duty of fair representation as it has developed in the private sector, and by interpreting "fair representation" to be synonymous with "adequate representation." The Union first argues that it adequately represents all bargaining unit employees because nonmembers are furnished representation by competent chapter officials or stewards. The Union next asserts that it is not legally required to provide attorney representation for any employee, and that attorney representation for Union members is merely an internal Union benefit that need not be extended to nonmembers.

■ Even assuming, *arguendo,* that the duty of fair representation under section 7114(a)(1) of the Statute is identical to the duty of fair representation as it has developed in the private sector, the Union's arguments are patently meritless. The principle underlying the duty of fair representation in the private sector is that "the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or *discrimination* toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967) (emphasis added). This duty applies whenever a union is representing bargaining unit employees either in contract negotiations or in enforcement of the resulting collective bargaining agreement. *See id.* The duty of fair representation does not establish an objective standard of "adequate representation" that the union must meet as a minimum, and that, once met, the union may use as a basis upon which to discriminate between members and nonmembers. Rather, under the duty of fair representation, a union may adopt virtually *any* non-arbitrary standard for providing representation of individual employees, so long as the standard adopted is applied in a nondiscriminatory manner with respect to all unit employees, *i.e.,* members and nonmembers alike.

■ It is axiomatic that a union practice that principally looks to union membership or nonmembership to determine the type of representation that will be provided bargaining unit employees is discriminatory. In the present case, representation by attorneys, who are formally trained and certified in the practice of law, is demonstrably different from representation by chapter officers and stewards. Indeed, by referring to attorney representation as an "extra service," "representation over and above the level of adequacy," a "benefit," and an "incentive to membership," *see* Brief for Petitioner at 13, the Union acknowledges that representation by non-attorneys is not equivalent to representation by attorneys.

Furthermore, the Union is incorrect in suggesting that the challenged policy merely reflects an internal Union benefit that is not subject to the duty of fair representation. Attorney representation here pertains

directly to enforcement of the fruits of collective bargaining. Therefore, as exclusive bargaining agent, the Union may not provide such a benefit exclusively for Union members.

### C.

The FLRA properly relied on the reasoning of the court in *Del Casal v. Eastern Airlines,* 634 F.2d 295 (5th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981), in support of the position taken in this case. In *Del Casal,* the Airline Pilots Association ("ALPA") refused to provide a pilot in the bargaining unit with a union staff attorney to represent him at an arbitration hearing because the pilot was not a member of the union. ALPA argued, as does NTEU in the present case, that it is not required by contract or law to furnish attorney representation, and that such representation is an internal union benefit like insurance that it permissibly can extend exclusively to members. The Fifth Circuit acknowledged that "ALPA has the authority to decide under what conditions an attorney will be supplied to a grievant," but stated that "the fact that the grievant is not a member of the union can play no part in that decision." 634 F.2d at 301. Thus, the court held that ALPA violated its duty of fair representation by refusing to provide an attorney to Del Casal solely because he was not a union member.

The National Treasury Employees Union argues that *Del Casal* is distinguishable from the present case because in *Del Casal* the union provided no representation at all to the employee, while in the present case NTEU allegedly provides competent representation to all employees. NTEU correctly characterizes *Del Casal,* but the distinction drawn between that case and this one reflects a difference without meaning. The critical consideration in *Del Casal* was not the mere *fact* of nonrepresentation; rather, the court focused on the *reason* for the union's refusal to represent the pilot. Indeed, the court in *Del Casal* conceded that "a union may refuse to prosecute a grievance which it considers to be lacking in

merit." 634 F.2d at 300. The issue, however, was

> whether a union may refuse to represent a member of the bargaining unit *on the ground that he is not a member of the union* without violating its duty of fair representation. Thirty-five years ago this court established the principle that *a union may not discriminate against members of its bargaining unit on the basis of that person's status as a non-member of the union.*

*Id.* (emphasis added) (citation omitted).

The opinion in *Del Casal* goes on to quote the language in *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967), that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." 634 F.2d at 301. The opinion also re-affirms the proposition that "discrimination against nonmember employees who are part of the bargaining unit is impermissibly arbitrary if no relevant distinctions exist between the union and nonunion employees." *Id.* Thus, the rationale for the court's decision in *Del Casal* is not that a union must provide *adequate* representation to all bargaining unit employees, but that a union must provide *nondiscriminatory* representation to all bargaining unit employees, *i.e.,* representation without regard to union membership status. That rationale is equally applicable to and dispositive of the present case.

### Conclusion

For the foregoing reasons, the order of the Federal Labor Relations Authority is

*Affirmed.*