**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

**v.**

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

**No. 85–1053.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 17, 1985.

Decided Sept. 2, 1986.

Gregory O'Duden, with whom Lois G. Williams was on brief for petitioner.

William E. Persina, Associate Sol., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., Steven H. Svartz, Deputy Sol. and Wendy B. Finck, Atty., Federal Labor Relations Authority were on brief for respondent. Matthew J. Wheeler, Atty., Federal Labor Relations Authority also entered an appearance for respondent.

Before ROBINSON and BORK, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

---

* Of the United States Court of Appeals for the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1982).

BORK, Circuit Judge:

The National Treasury Employees Union petitions for review of a decision and order of the Federal Labor Relations Authority and the Authority cross-applies for enforcement of its order. The Authority held that the union committed an unfair labor practice by refusing to provide attorneys to represent employees who were not members of the union on the same basis as it provided attorneys to members. The attorney representation sought related to a statutory procedure to challenge a removal action and not to a grievance or other procedure growing out of a collective bargaining agreement.

The question before us is whether the distinction between procedures that arise out of the collective bargaining agreement and those that do not is dispositive or irrelevant under the pertinent provision of the Federal Service Labor-Management Relations Statute. The union contends that it is dispositive because the statute enacts the private-sector duty of fair representation, a duty that is limited to those matters as to which the union is the exclusive representative of the employees. Since the NTEU was not the exclusive representative as to the statutory appeal involved here, the duty of fair representation did not attach, and, the union contends, it was free to provide representation to members that it denied to non-members. The Authority, on the other hand, argues that the statute enforces a duty of nondiscrimination broader than that of private-sector fair representation, a duty that extends to all matters related to employment.

The facts being undisputed, we have before us a single, clearly-defined issue of statutory construction. We think the statute does not admit of the Authority's interpretation and therefore reverse.

I.

NTEU is the exclusive representative of all non-professional employees of the regional offices of the Bureau of Alcohol, Tobacco and Firearms, Department of Treasury. In August, 1979, BATF gave notice of its intention to institute an adverse action against Carter Wright, a BATF inspector in Denver, Colorado. The action would, if successful, result in Wright's discharge. Wright, who was not an NTEU member, telephoned Jeanette Green, president of the NTEU chapter representing his bargaining unit, and asked whether non-members were eligible to obtain an NTEU attorney. He did not tell Green what kind of a case was involved. She replied that it was NTEU's "policy generally not to furnish legal counsel to non-members." Green suggested that Wright call an NTEU staff attorney in Austin, Texas, for more information, but Wright instead telephoned NTEU National Vice-President Robert Tobias in Washington, D.C. They discussed the details of Wright's case, and Tobias said he would consult the union's national president. Wright called back a few days later and Tobias said the president had decided it "wouldn't be advisable" for the union to provide an attorney. He and the president thought Wright's case not a good one. Tobias said they handled cases for union members automatically but that non-members with poor cases did not necessarily receive representation.

Several weeks later the national president of NTEU sent a memorandum to all local chapter presidents stating that NTEU would continue its policy of refusing to supply attorneys to non-members. This policy applied across the board, to procedures related to the collective bargaining agreement as well as to those not so related. This court, as will be seen, has held that the discrimination between members and non-members with respect to procedures of the former type violates the statute.

BATF proceeded against Wright and ordered him removed. Wright hired private

counsel, pursued the statutory appeals procedure created by the Civil Service Reform Act, *see* 5 U.S.C. §§ 7512, 7513, and 7701 (1982), and ultimately prevailed when the Merit Systems Protection Board overturned the agency's removal decision.

## II.

BATF filed an unfair labor practice charge against NTEU and its Denver chapter. FLRA's General Counsel then issued a complaint alleging that the union violated 5 U.S.C. § 7114(a)(1) (1982), a provision of the Federal Service Labor-Management Relations Statute, by following a policy of discrimination between union members and non-members in the provision of attorney representation. The violation of section 7114(a)(1) meant, it was charged, that the union had committed unfair labor practices in violation of section 7116(b)(1) and (8) of the statute.[1] The union was also charged with a separate unfair labor practice under section 7116(b)(1) for violating section 7102.[2]

The Administrative Law Judge found that both the Denver chapter and the NTEU had committed the unfair labor practices charged. The ALJ assumed without deciding that the NTEU had no duty to represent any employee before the MSPB but held that, if the NTEU provided representation to union members, it must provide equal representation to non-members. *See* Joint Appendix ("J.A.") at 109.

The Authority held that the Denver chapter had not separately violated the statute but adopted the ALJ's other findings, conclusions, and recommendations. J.A. at 103. The NTEU petitioned this court for review and the FLRA cross-applied for enforcement of its order.

## III.

The scope of the NTEU's duty depends upon the meaning of the second sentence of section 7114(a)(1) of the statute. That section provides:

A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.

5 U.S.C. § 7114(a)(1) (1982).

Each party contends that its position is compelled by the plain language of the second sentence: the union, that the statute embodies only the private-sector duty of fair representation; the Authority, that the statute states a flat duty of nondiscrimination in all matters related to employment. We, on the other hand, find nothing particularly plain or compelling about the text, standing alone.

The statute requires the union to act evenhandedly with respect to the "interests" of employees. Adopting the ALJ's

---

1. The charges under these sections depend upon a finding that § 7114(a)(1) was violated. Section 7116(b)(1) provides that it is an unfair labor practice for a union "to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter." 5 U.S.C. § 7116(b)(1) (1982). Section 7116(b)(8) makes it an unfair labor practice for a union "to otherwise fail or refuse to comply with any provision of this chapter."

2. That section provides:

Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right. Except as otherwise provided under this chapter, such right includes the right—

(1) to act for a labor organization in the capacity of a representative and the right, in that capacity, to present the views of the labor organization to heads of agencies and other officials of the executive branch of the Government, the Congress, or other appropriate authorities, and

(2) to engage in collective bargaining with respect to conditions of employment through representatives chosen by employees under this chapter.

5 U.S.C. § 7102 (1982).

analysis, the FLRA found that Wright had an "interest," within the meaning of section 7114(a)(1)'s second sentence, in pursuing his appeal under the Civil Service Reform Act and so must be furnished counsel by the union for that purpose if the union furnishes counsel for the same purpose to union members. The difficulty with this analysis is that the meaning of "interests" is not given by the statute and is not self-evident. Unless the word is taken to mean all things that employees might like to have—a meaning that neither party attributes to the word—"interests" requires further definition. While deference is owed the Authority's statutory construction, we think the circumstances of this case—the structure of the statute, and, more particularly, the history against which section 7114(a)(1) was written—establish Congress' intent to enact for the public sector the duty of fair representation that had been implied under the private sector statute and therefore preclude the Authority's interpretation. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

The structure of section 7114(a)(1) supports the union's position—that the "interests" protected are only those created by the collective bargaining agreement and as to which the union is the exclusive representative. Thus, the first sentence establishes the union as the "exclusive representative" and states what the union is entitled to do in that capacity: "act for, and negotiate collective bargaining agreements covering, all employees in the unit." The second sentence of a discrete provision such as this might reasonably be expected to relate to the same subject as the first. A natural, though not necessarily conclusive, inference, therefore, is that the duty of *representing* all employees relates to the union's role as exclusive *representative.*

This inference is reinforced by the way the statute deals with representation in procedures of various sorts.

Section 7114(a)(5) provides:

The rights of an exclusive representative under the provisions of this subsection shall not be construed to preclude an employee from—

(A) being represented by an attorney or other representative, of the employee's own choosing in any grievance or appeal action; or

(B) exercising grievance or appellate rights established by law, rule, or regulation;

except in the case of grievance or appeal procedures negotiated under this chapter.

5 U.S.C. § 7114(a)(5) (1982). The statute itself thus distinguishes between the employees' procedural and representational rights by drawing the line the union urges here, the line between matters arising out of a collective bargaining agreement and other matters. Section 7114(a)(5) does not address the precise question before us but it employs a distinction that is familiar from private sector cases and thus suggests that section 7114(a)(1) may similarly be drawn from private sector case law with which Congress certainly was familiar.

These observations bear upon a line of argument the FLRA apparently found persuasive. The ALJ, whose rulings were affirmed and whose findings and conclusions were adopted by the Authority, reasoned that the Federal Service Labor-Management Relations Statute imposes a broader duty of fair representation upon unions than courts have implied in the private sector under the National Labor Relations Act.

The doctrine of fair representation developed in the private sector is applicable under the Statute; but with an important and significant difference: § 14(a)(1) specifically provides that "An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization

membership".... The first sentence of § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), is substantially similar to the first sentence of § 14(a)(1) of the Statute; but the language of the second sentence of § 14(a)(1) ... is wholly absent in § 9(a) of the NLRA.... Consequently, under the Statute the statutory command of § 14(a)(1), *i.e.*, a specific non-discrimination provision, must be enforced, not merely the concept of fair representation developed in the private sector as flowing from the right of exclusive representation.

J.A. at 119. This is the only reasoning offered and it is unpersuasive in light of the history of, and the rationale for, the duty of fair representation. The ALJ, and hence the Authority, reason that the private-sector duty of fair representation cannot have been intended because Congress added to this statute a sentence about unions' duties that is not found in the NLRA. The quick answer is that the duty of fair representation was imposed upon the NLRA by courts reasoning from the NLRA's equivalent to the first sentence of section 7114(a)(1). Subsequently, Congress wrote the Federal Service statute and added a second sentence that capsulates the duty the courts had created for the private sector. The inference to be drawn from Congress' use of the language of the judicial rule of fair representation is not that Congress wished to avoid that rule. To the contrary, the inference can hardly be avoided that Congress wished to enact the rule.

The duty of fair representation was first formulated by the Supreme Court in *Steele v. Louisville & Nashville R.R.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The Court found the duty to be inferred from the union's status as exclusive representative of the employees in the bargaining unit. Thus, the Court said, "Congress has seen fit to clothe the bargaining represent-ative with powers comparable to those possessed by a legislative body both to create and restrict the rights of those whom it represents, but it has also imposed on the representative a corresponding duty." *Id.* at 202, 65 S.Ct. at 232 (citation omitted). The Court stated it was "the aim of Congress to impose on the bargaining representative of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them." *Id.* at 202–03, 65 S.Ct. at 231–32.

So long as a labor union assumes to act as the statutory representative of a craft, it cannot rightly refuse to perform the duty, which is inseparable from the power of representation conferred upon it, to represent the entire membership of the craft. While the statute does not deny to such a bargaining labor organization the right to determine eligibility to its membership, it does require the union, in collective bargaining and in making contracts with the carrier, to represent non-union or minority union members of the craft without hostile discrimination, fairly, impartially, and in good faith.

*Id.* at 204, 65 S.Ct. at 233.

It will be observed that the Court, in the case creating the duty of fair representation, repeatedly rooted that duty in the powers conferred upon the union by statute, the powers belonging to the union as exclusive representative.[3] The duty was thus co-extensive with the power; the duty is certainly not narrower than the power, and this formulation indicates that it is also not broader.

This view of the duty as arising from the power and hence coterminous with it is expressed again and again in the case law:

Because "[t]he collective bargaining system as encouraged by Congress and ad-

---

**3.** Of course, a *minority* union has never been held to act under a duty of fair representation. A minority union cannot be recognized as the exclusive bargaining representative without violating the NLRA. *See International Ladies' Garment Workers' Union, AFL–CIO v. NLRB,* 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961). This provides additional support for the view that the duty arises from, and its contours are defined by, a union's status as exclusive representative.

ministered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit," *Vaca v. Sipes*, 386 U.S. 171, 182 [87 S.Ct. 903, 912, 17 L.Ed.2d 842] (1967), the controlling statutes have long been interpreted as imposing upon the bargaining agent a responsibility equal in scope to its authority, "the responsibility of fair representation." *Humphrey v. Moore*, [375 U.S. 335] at 342 [84 S.Ct. 363, 368, 11 L.Ed.2d 370 (1964)].... Since *Steele v. Louisville & N.R. Co.*, 323 U.S. 192 [65 S.Ct. 226, 89 L.Ed. 173] (1944), ... the duty of fair representation has served as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes, supra*, 386 U.S. at 182, 87 S.Ct. at 912.

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976).[4]

If this were a private sector case, it would seem clear that the union has not violated its duty of fair representation because the rationale that gives rise to that duty does not apply here. In the case before us the union's authority as exclusive representative did not strip Wright of redress as an individual. To the contrary, Wright actively pursued his statutory appeal rights and won. He did not do that by the union's suffrage but as a matter of right. Not only was that appeal procedure open to him but the union was forbidden by section 7114(a)(5) from attempting to control it.

The NTEU's position thus runs along the line established by the private-sector case law and suggested by the structure of the relevant statutory provisions. The Authority's position adopts a new line that is not to be found in the case law antedating the statute or in the statute's structure. Counsel for the FLRA was asked at oral argument whether, on the Authority's reasoning, a union that provided probate advice to its members would thereby be obligated to provide the same advice to non-members. Counsel replied that the union would not have that duty, the distinction being that the provision of probate services does not relate directly to the members' or non-members' employment. Of course, the statute does not even imply that distinction, nor does the pre-existing case law.

The ambiguity that will often exist in determining whether a service is or is not directly related to the employment relationship may be a reason to be wary of the Authority's proffered test. It is easier to determine whether the service provided grows out of the collective bargaining relationship. There is, moreover, a clear and articulated policy reason for confining the scope of the union's duty to the scope of its exclusive power: the individual, having been deprived by statute of the right to protect himself must receive in return fair representation by the union. Rights are shifted from the individual to the union and a corresponding duty is imposed upon the union. No such policy supports the additional line drawn by the Authority. The FLRA's position depends not upon the reciprocal relationship of the union's rights and duties but upon a demand for equality of services when the employment relationship is involved. Yet the distinction between services that are employment-related and those that are not seems arbitrary. All services provided by the union are employment-related in the sense that they are provided to employees only. When, as here, the individual retains the right to protect himself in the employment relationship, it is by no means obvious why the

---

**4.** *See International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. NLRB*, 587 F.2d 1176, 1181 (D.C.Cir. 1978); *1199 DC, National Union of Hospital and Health Care Employees v. National Union of Hospital and Health Care Employees*, 533 F.2d 1205, 1208 (D.C.Cir.1976); *Truck Drivers and Helpers, Local Union 568 v. NLRB*, 379 F.2d 137, 141 & n. 2 (D.C.Cir.1967); *see generally* H. Wellington, *Labor and the Legal Process* 129–84 (1968). For a recent statement and application of the duty of fair representation, *see, e.g., Kolinske v. Lubbers*, 712 F.2d 471, 481–82 (D.C.Cir. 1983).

union's provision of an attorney to assist in a statutory appeal action is more valuable than the union's provision of an attorney to draft a will. Both are services employees will value, both would cost the individual money, so that it is not apparent why it is discrimination to provide one service to union members only but not discrimination to provide the other in that restricted fashion.

 Thus, we cannot accept as reasonable the Authority's claim that, in including the second sentence in section 7114(a)(1), Congress intended to impose a duty broader than that implied in the private sector. The Supreme Court in *Steele* and subsequent cases drew from the first sentence of section 9(a) of the NLRA an implication of a duty that is substantially expressed in the second sentence of 5 U.S.C. § 7114(a)(1) (1982), the federal sector provision. The logical, and we think (in light of the history and the rationale for the duty of fair representation) conclusive, inference is that when Congress came to write section 7114(a)(1) it included a first sentence very like the first sentence of section 9(a) and then added a second sentence which summarized the duty the Court had found implicit in the first sentence. In short, Congress adopted for government employee unions the private sector duty of fair representation.

Two additional factors persuade us that this is the correct inference. First, if Congress were changing rather than adopting a well-known body of case law, one would expect mention of that intention some-where in the legislative history. The Authority has referred us to, and we are aware of, nothing of that sort. Second, if the union's duty had been broadened beyond the scope of its right of exclusive representation, one would expect the range of the new duty to be delineated, or at least suggested, probably by some indication in the statute or its legislative history of what the term "interests" means. It is conceded that the word does not cover everything an employee might like to have, which would mean that the union may not differentiate between members and non-members in any way whatever. But if that is not the case, the statute gives no direction of any sort, unless it adopts the private sector equation of the scope of the union's right and its duty.[5]

This leaves only the Authority's argument that our decision in *NTEU v. FLRA*, 721 F.2d 1402 (D.C.Cir.1983), is "dispositive" of this case. The FLRA contends that we affirmed its decision that "discrimination based on union membership in *any* representational activity relating to working conditions which an exclusive representative undertakes to provide unit employees is violative of the Statute.... At no point did this court in its decision in 721 F.2d 1402 intimate that it was reaching its decision only in connection with discrimination in grievance arbitration or other contractually created proceedings." Brief for the Federal Labor Relations Authority at 17–18 (emphasis in original). It is instructive to compare that representation by

**5.** The ALJ found that NTEU's failure to provide Wright with an attorney constituted not only a violation of § 7114(a)(1), but also "an independent violation of section 7116(b)(1) of the Statute by interfering with the employees' protected right under section 7102 of the Statute to refrain from joining a labor organization." J.A. at 103. The Authority appears to have adopted these conclusions: "[T]he Authority finds that NTEU has failed and refused to comply with section 7114(a)(1) of the Statute, and therefore has violated section 7116(b)(1) and (8) of the Statute." J.A. at 104.

It follows from our holding that the Union did not violate § 7114(a)(1) that there was no independent violation of § 7102. The latter section provides in pertinent part: "Each employee shall have the right to form, join, or assist any labor organization, or to refrain from any such activity, freely and without fear of penalty or reprisal, and each employee shall be protected in the exercise of such right." 5 U.S.C. § 7102 (1982). Were we to conclude that although a union's provision of counsel to members but not to non-members concerning matters unrelated to the collective bargaining agreement does not violate § 7114(a)(1), it nonetheless violates § 7102, we would be constrained to hold that a union's provision of *any* benefit to members but not non-members violates § 7102. Not even the Authority contends that the statute compels this result. Accordingly, our conclusion that the Union has not violated § 7114(a)(1) requires the same conclusion with respect to § 7102.

counsel for the Authority with the case counsel is discussing.

This court stated the practice under review in 721 F.2d 1402 as follows:

> Under a policy adopted and implemented by the Union, only *Union members are furnished assistance of counsel,* in addition to representation by local chapter officials and Union stewards, with respect to grievances or other matters affecting unit employees *in the context of collective bargaining. Non-members,* however, are limited to representation by chapter officials and stewards, and *are expressly denied the assistance of counsel in matters pertaining to collective bargaining.*

721 F.2d at 1403 (emphasis added and omitted). These discrepant policies framed *the issue the court thought it was deciding.* The court stated that the duty of fair representation "applies whenever a union is representing bargaining unit employees either in contract negotiations or in enforcement of the resulting collective bargaining agreement." *Id.* at 1406. This court thus stated the duty of fair representation as the NTEU states it here, not as the Authority states it, as extending to all matters relating to employment.

To put a cap on it, the court stated:

> [T]he Union is incorrect in suggesting that the challenged policy merely reflects an internal Union benefit that is not subject to the duty of fair representation. *Attorney representation here pertains directly to enforcement of the fruits of collective bargaining. Therefore, as exclusive bargaining agent, the Union may not provide such a benefit exclusively for Union members.*

*Id.* at 1406–07 (emphasis added). It is difficult to know what could have prompted counsel to say that the case stands for the proposition that a union may not differentiate between members and non-members as to *any* representational function and that at no point did the opinion intimate that the decision rested on the fact that the representation related to contractually created proceedings. We would have thought that no one could read the case in that fashion. This court's opinion in 721 F.2d 1402 clearly proceeds on a rationale that supports the position here of the NTEU, not that of the FLRA.[6] So clear is this that, if we had before us only the precedent of that case, and nothing more, we would have difficulty holding for the Authority.

For the foregoing reasons, the Authority's decision is hereby

Reversed.

SWYGERT, Senior Circuit Judge, dissenting.

Because I believe that this case is directly controlled by *National Treasury Employees Union v. Federal Labor Relations Authority,* 721 F.2d 1402 (D.C.Cir.1983), I respectfully dissent.

*NTEU* is identical to the case at bar. As the panel in *NTEU,* 721 F.2d at 1404, observed, that case involved a request by nonunion members for legal representation in connection with "proposed removal actions," which necessarily involved possible statutory appeals. In the case at bar, it is

---

**6.** The Authority states that its construction of the statute is "fully consistent with private sector precedent" and cites *Del Casal v. Eastern Airlines,* 634 F.2d 295 (5th Cir.), *cert. denied,* 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981), and *Bowman v. Tennessee Valley Authority,* 744 F.2d 1207 (6th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Brief for the Federal Labor Relations Authority at 15 n. 10. Neither case supports the Authority's position here. *Del Casal* involved the union's refusal to represent an employee in a grievance procedure governed by the collective bargaining agreement on the ground that he was not a union member. That was held a breach of the duty of fair representation. *Bowman* made a similar holding where the union had negotiated a collective bargaining agreement giving members preferential transfer rights. The court linked the duty of fair representation to the right of exclusive representation. Since both cases involved discrimination against non-members as to matters within the union's role as exclusive representative, neither provides any support for the Authority's position here. If these cases are "fully consistent" with the FLRA's position, that can be so only in the sense that they are not explicitly inconsistent.

undisputed that the NTEU refused to provide attorney representation even before it knew that the case might involve statutory appeals. In fact, the same administrative law judge decided both cases and found them to be indistinguishable. He mentioned the distinction between grievances and statutory appeals only briefly and in a limited context. Although there is some language in *NTEU*, which the majority quotes, that supports the position advanced by the Union and ultimately adopted by the majority here, *see id.* at 1406, 1407, most of the language in that opinion is much broader and supports the view that the panel in that case found the Agency's interpretation of section 7114(a), advanced here, to be reasonable, including its broad interpretation of "interests" to cover most, if not all, matters relating to employment. *See id.* at 1406. In fact, in that case, the panel expressly observed that section 7114(a)(1) contains a broad antidiscrimination provision not found in the National Labor Relations Act, and its analysis relied heavily on it. *See id.* at 1407. The result reached by the majority in the case at bar does not, in my view, adequately deal with this provision that the panel in *NTEU*, 721 F.2d 1402, found compelling.

Even if I were to agree with the majority that *NTEU* does not control, I would find that the FLRA's interpretation is entitled to deference under *Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (Court should defer to agency's interpretation of its enabling statute if Congress has not expressly precluded that interpretation and if it is a reasonable interpretation of the statute.) In my view, the FLRA's interpretation is reasonable and does not expressly contravene congressional intent. I am simply not persuaded by the majority's analysis in this case that, by adding the broad antidiscrimination provision and by failing to expressly demonstrate in the legislative history the precise contours of that provision, Congress could not possibly have intended a broader duty of fair representation applicable to public sector employees than is applicable to private sector employees.

Based on the foregoing, I believe this case is controlled by *NTEU v. FLRA,* 721 F.2d 1402, and that the FLRA's interpretation is entitled to deference under *Chevron, USA, Inc.* As a result, the Federal Labor Relations Authority's order should be enforced.