United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 1, 1999 Decided February 26, 1999 

 No. 98-1252

 International Union, 

 United Automobile, Aerospace and 

 Agricultural Implement Workers of America, (UAW), 

 Petitioner

 v.

 National Labor Relations Board, 

 Respondent

 On Petition for Review and Cross-Application 

 for Enforcement of an Order of the 

 National Labor Relations Board

 Michael B. Nicholson argued the cause for petitioner. 
With him on the brief was Leonard R. Page.

 Charles Donnelly, Supervisory Attorney, National Labor 
Relations Board, argued the cause for respondent. With him 


on the brief were Linda Sher, Associate General Counsel, and 
John D. Burgoyne, Acting Deputy Associate General Counsel. 
David S. Habenstreit and Steven B. Goldstein, Attorneys, 
entered appearances.

 Before: Edwards, Chief Judge, Ginsburg and Tatel, 
Circuit Judges.

 Opinion for the Court filed by Chief Judge Edwards.

 Edwards, Chief Judge: This case presents a narrow ques-
tion: Does a union commit an unfair labor practice by deny-
ing an employee, based solely on the employee's status as a 
non-union member, the right to appeal a decision not to 
pursue the employee's grievance to the final step of a contrac-
tual grievance procedure, where a successful appeal would 
result in reinstatement of the employee's grievance?

 The instant dispute arose in connection with the represen-
tation afforded Jerry V. Kirby by the International Union, 
United Automobile, Aerospace and Agricultural Implement 
Workers of America ("UAW" or "Union") with respect to 
Kirby's employment at Ford Motor Company. Kirby was 
discharged by Ford for alleged misconduct; a grievance was 
then filed on his behalf under the UAW-Ford collective 
bargaining agreement. Subsequently, Union officials de-
clined to pursue the grievance to arbitration, assertedly for 
lack of merit. Kirby sought to challenge the Union's decision 
through an appeal pursuant to an internal Union review 
process. Ford has an agreement with the UAW providing 
that a grievance will be reinstated for further consideration 
under the parties' contractual grievance/arbitration proce-
dures if it has been successfully appealed in the internal union 
process. Nonetheless, the UAW refused to process Kirby's 
appeal solely because, at the time when it was raised, Kirby 
was no longer a member of the Union.

 Kirby then filed an unfair labor practice charge with the 
National Labor Relations Board ("NLRB" or "Board"). The 
Board determined that the Union's refusal to allow Kirby to 
pursue an appeal, based solely on Kirby's membership status, 
violated s 8(b)(1)(A) of the National Labor Relations Act 

("NLRA" or "Act"). The Union now petitions for review of 
the NLRB's order and the Board cross-petitions for enforce-
ment of that order.

 This case appears to raise an issue of first impression. 
However, the question at hand is not difficult and the 
Board's judgment is eminently reasonable, thus warranting 
enforcement. On the facts here, it is clear that the Union's 
purportedly "internal" appeal process effectively establishes 
an additional step in the UAW-Ford contractual grievance 
procedure. Because Ford has agreed that a successful ap-
peal to the Union will result in reinstatement of an employ-
ee's grievance, access to the appeal process may directly 
affect an employee's job status, by supplying the last avail-
able channel to keep a grievance alive in the hope of a 
favorable resolution. Under these circumstances, the Board 
reasonably concluded that availability of this process on a 
members-only basis unlawfully restrains and coerces employ-
ees under s 7 of the Act.

 I. Background

A. The Facts

 The relevant facts are essentially undisputed. Jerry Kirby 
began his employment with Ford in 1977. On March 31, 
1994, Ford discharged Kirby, assertedly for "being under the 
influence of alcohol, absenteeism and threatening manage-
ment." Summary Report of William C. Schaub, Jr., NLRB 
Regional Director (Feb. 13, 1996) ("Summary Report"), re-
printed in Joint Appendix ("J.A.") 68. The local representa-
tive of the UAW, the designated collective bargaining agent 
for employees at Ford, immediately filed a grievance with the 
company on Kirby's behalf.

 Pursuant to the collective bargaining agreement between 
the UAW and Ford, the processing of an employee grievance 
follows a four-step procedure. See Agreements Between 
UAW and Ford Motor Company (Sept. 15, 1993), reprinted in 
J.A. 181-93. The first three steps, with increasing degrees of 
formality, involve processes for dispute resolution at the 
company level. See id. at 182-85. If a grievance is not 

settled, withdrawn, or otherwise resolved in the first three 
steps, the National Ford Department of the International 
Union may appeal the matter to impartial, binding arbitra-
tion. See id. at 186.

 Article 33 of the UAW constitution provides, inter alia, 
that a "member [of the Union] shall have the right under this 
Article to appeal any action ... or refusal to act" on the part 
of the Union. Constitution of the International Union, art. 
33, s 1 (June 1995), reprinted in J.A. 114. Under this 
provision, if the Union opts not to pursue a member's griev-
ance to arbitration, the affected employee may appeal that 
decision to the Union's appellate bodies for reconsideration. 
The Union and Ford have a "letter of understanding," pursu-
ant to which the company has agreed that, following a suc-
cessful Article 33 appeal, an employee's grievance will, at the 
Union's request, be reinstated at the same level in the 
grievance procedure at which it was originally settled or 
withdrawn. See Letter from Robert M. Middlekauff, Di-
rector, Ford Labor Relations Planning Office, to Ken Bannon, 
Vice President, International Union, UAW (Oct. 5, 1976), 
reprinted in J.A. 65-66. The letter explicitly provides that 
reinstatement under this agreement will not expose the com-
pany to liability for any back pay that accrued during the 
period from the original disposition to the reinstatement. See 
id. at 65.

 On January 30, 1995, Kirby's grievance was denied at the 
third step of the contractual procedure. At that point, the 
Union's local representative notified Kirby that his grievance 
was being transferred to the International Union for possible 
appeal to arbitration. See Notice from UAW Local 36 to 
Kirby, reprinted in J.A. 50. On May 16, however, an Inter-
national Union representative orally informed Kirby that his 
grievance would not be pursued to arbitration, assertedly for 
lack of merit. See Stipulation of Facts at 3, p 12, reprinted in 
J.A. 47; International Union, United Automobile, Aerospace 
and Agricultural Implement Workers of America (UAW), 
AFL-CIO (Mar. 31, 1998) ("NLRB Decision and Order"), 
reprinted in J.A. 200 n.1. This constituted the final resolu-
tion of Kirby's grievance.


 On June 1, 1995, Kirby filed an appeal with the Union to 
contest the refusal to submit his grievance to arbitration. On 
June 26, the UAW's president wrote Kirby to acknowledge 
his appeal, see Letter from Stephen P. Yokich, UAW Presi-
dent, to Kirby (June 26, 1995), reprinted in J.A. 63, but on 
July 28, he again wrote Kirby, this time denying Kirby's right 
to appeal. See Letter from Yokich to Kirby (July 28, 1995), 
reprinted in J.A. 64. The president's letter stated that 
Article 33 of the UAW constitution grants a right of appeal to 
Union members only, and that Kirby was not entitled to 
invoke this procedure, because his membership had lapsed 
since his discharge. See id. The letter further explained 
that Article 16 of the UAW constitution provides that a Union 
member will retain member status for six months following a 
discharge, without any requirement of paying dues. Howev-
er, the member must then notify the Union within the last ten 
days of that six-month period that he or she wishes to remain 
a member. Because Kirby had not availed himself of that 
procedure, he did "not have the status of a member to make 
an appeal." Id. Prior to receiving this letter, Kirby appar-
ently was unaware that his membership had lapsed. See 
Transcript of Hearing Before Administrative Law Judge 
(Dec. 18, 1996) ("Tr.") at 29, reprinted in J.A. 35.

 B.Board Proceedings

 On October 12, 1995, Kirby filed a charge with the NLRB, 
alleging that the Union's withdrawal of his discharge griev-
ance violated its statutory duty to fairly represent him, and 
that its refusal to permit Kirby to appeal that decision based 
solely on his membership status constituted an unfair labor 
practice. Following an investigation, the Board's Regional 
Director declined to issue a complaint on Kirby's first claim, 
finding "insufficient evidence that [the Union] failed to prop-
erly represent [Kirby] in violation of [its] duty of fair repre-
sentation regarding the processing of his discharge griev-
ance." Summary Report, reprinted in J.A. 67-68. However, 
the Regional Director determined that the "portion of the 
charge that involve[d] the [Union's] refusal to consider [Kir-
by's] appeal ... because [he was] no longer a member of the 
union remain[ed] in full force and effect." Id. at 67.


 On February 29, 1996, the Board's General Counsel issued 
a complaint, alleging that, by "refus[ing] to allow [Kirby] to 
appeal, pursuant to [the Union's] Constitution, a decision by 
[the Union] not to submit his discharge grievance to an 
umpire," and by basing that refusal on the fact that Kirby 
"was not a member of [the Union]," the Union "ha[d] been 
restraining and coercing employees in the exercise of the 
rights guaranteed in Section 7 of the Act in violation of 
Section 8(b)(1)(A) of the Act." Complaint and Notice of 
Hearing at 2, pp 8-10 (Feb. 29, 1996), reprinted in J.A. 6. 
Subsequently, the matter was heard by an administrative law 
judge ("ALJ") on the sole question of whether the Union 
violated the NLRA by denying Kirby the right of appeal. 
See Tr. at 8-9, reprinted in J.A. 16-17. Because the only 
issue before the ALJ was the legality of the Union's refusal to 
hear Kirby's appeal, the ALJ refused to hear evidence re-
garding the merits of Kirby's grievance. See id. at 34, 
reprinted in J.A. 40.

 At the conclusion of the hearing, the ALJ held that the 
Union had violated s 8(b)(1)(A) of the Act by denying Kirby 
the right to appeal solely because of Kirby's non-member 
status. See International Union, United Automobile, Aero-
space and Agricultural Implement Workers of America 
(UAW), AFL-CIO (Aug. 5, 1997) (ALJ Decision) at 4, re-
printed in J.A. 195. The ALJ found that the availability of 
the Union's internal appeal process affects an individual's 
status as an employee by enhancing his or her chance to 
remain employed. See id. Therefore, in the ALJ's view,

 [t]he privilege accorded a member, namely the right to 
 appeal an adverse decision, has the coercive effect on 
 unaffiliated employees to join the union. Section 7 of the 
 Act provides that employees shall have the right to join a 
 union and the right to refrain from any such activity. It 
 follows that article 33 in the context of the grievance 
 process contravenes the statutory labor policy inherent 
 in Section 7 of the Act. This is particularly so because 
 the grievance procedure is at the heart of labor policy.

Id. (citations and internal quotation marks omitted). Al-
though acknowledging that the Union was not required to 
provide the internal appeal mechanism as an added benefit 
for those pursuing grievances under the contractual proce-
dure, the ALJ nonetheless concluded that "the Act requires 
that if such an opportunity is provided it must be offered 
equally to everyone whom the [Union] represents." Id. Ac-
cordingly, the ALJ recommended that the Union be ordered 
to cease and desist from "[r]efusing to allow [Kirby] or any 
other non-member to appeal, pursuant to its constitution, a 
decision not to submit the discharge grievance to an umpire." 
Id. The ALJ also recommended that the Union be ordered 
affirmatively to "[r]evise or interpret article 33 of its constitu-
tion so as to permit nonmembers the same rights of appeal as 
members in grievance matters, and allow [Kirby] to appeal 
the decision not to submit his discharge grievance to an 
umpire." Id.

 The Board affirmed the ALJ's findings and conclusions, 
and adopted the recommended order with one important 
modification. See NLRB Decision and Order, reprinted in 
J.A. 200. In particular, the Board made it clear that its 
holding was limited to a situation, as with the UAW and Ford, 
in which the employer agrees that any successful appeal in 
the Union process will result in reinstatement of an employ-
ee's grievance under the parties' contractual grievance/arbi-
tration procedures. The Board did not address the legality of 
a "members-only" internal union appeal process that does not 
implicate the employer or the employee's job status. See id. 
at 1-2, reprinted in J.A. 200-01.

 II. Analysis

 There is no dispute here that the Union denied Kirby the 
right of appeal under its constitution for one reason and one 
reason alone: Kirby was not a member of the Union. There 
is also no dispute that, had the Union permitted Kirby to 
appeal its decision, and had Kirby prevailed before the Un-
ion's appellate bodies, Ford would have reinstated Kirby's 
grievance, giving Kirby an opportunity to pursue his claim in 
arbitration. The question is whether, under these circum-


stances, the Union's policy of limiting access to its Article 33 
appeal mechanism to only Union members constitutes an 
unfair labor practice.

 We will "uphold the Board's determination unless it has 
'acted arbitrarily or otherwise erred in applying established 
law to the facts at issue.' " Pittsburgh Press Co. v. NLRB, 
977 F.2d 652, 654 (D.C. Cir. 1992) (quoting North Bay Dev. 
Disabilities Servs., Inc. v. NLRB, 905 F.2d 476, 478 (D.C. 
Cir. 1990)). Likewise, we will "accord[ ] particular weight" to 
the Board's construction of the statute it is charged with 
administering. Id. at 655 (citing Chevron USA, Inc. v. Natu-
ral Resources Defense Council, Inc., 467 U.S. 837, 844 (1984)). 
Bearing these principles in mind, we conclude that the Board 
reasonably interpreted and applied the NLRA in finding that 
the Union committed an unfair labor practice.

 The key statutory provisions in this case are familiar. 
Section 7 of the NLRA guarantees employees, inter alia, "the 
right to ... form, join, or assist labor organizations ... and 
... to refrain from any or all of such activities." 29 U.S.C. 
s 157 (1994). Section 8(b)(1)(A) of the Act, in turn, imple-
ments this guarantee, by making it an unfair labor practice 
for a union to "restrain or coerce" employees in the exer- 
cise of their s 7 rights. Id. s 158(b)(1)(A). However, 
s 8(b)(1)(A) also contains an important proviso, i.e., that 
nothing in the section shall be construed to "impair the right 
of a labor organization to prescribe its own rules with respect 
to the acquisition or retention of membership therein." Id. 
These provisions are generally understood to protect the 
right of employees to participate in or refrain from organized 
union activities, while preserving the authority of unions to 
govern their internal affairs without running afoul of the Act. 
See NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 195 
(1967). Therefore, a rule may be shielded from the Act's 
proscription if it "reflects a legitimate union interest, impairs 
no policy Congress has imbedded in the labor laws, and is 
reasonably enforced against members who are free to leave 
the Union and escape the rule." Scofield v. NLRB, 394 U.S. 
423, 430 (1969).


 It is undisputed here that the union would have committed 
an unfair labor practice if, instead of denying non-members 
access to the Union appeal process, it had discriminated 
between members and non-members in the processing of 
grievances under the UAW-Ford collective bargaining agree-
ment. See Oil, Chem. and Atomic Workers Int'l Union, 
Local No. 5-114, 295 N.L.R.B. 742 (1989) (holding that dispa-
rate treatment of non-union employee in connection with 
grievance procedure was unlawful); cf. National Treasury 
Employees Union v. FLRA, 721 F.2d 1402, 1406 (D.C. Cir. 
1983) (holding that union policy of furnishing only its mem-
bers with legal counsel in connection with grievances under 
collective bargaining agreement violated union's duty of fair 
representation under Federal Service Labor-Management 
Relations Statute).

 The coercive effect of such discrimination would be mani-
fest, for as the designated collective bargaining agent for 
Ford employees, the Union has exclusive authority to press 
Kirby's grievance--on which his future job status depends--
with the company. See Agreements Between UAW and Ford 
Motor Company (Sept. 15, 1993) at 44, reprinted in J.A. 182. 
Moreover, such discrimination would not be insulated from 
the Act's proscription, because it does not fall within the 
scope of internal Union affairs. Rather, contractual griev-
ance procedures deal directly with employees' terms and 
conditions of employment, and these are hardly matters that 
are strictly "internal" union affairs. See Branch 6000, Nat'l 
Ass'n of Letter Carriers, 232 N.L.R.B. 263, 263 (1977) (finding 
that exclusion of non-members from a vote directly affecting 
their working conditions did not pertain to matters "exclu-
sively within the internal domain of the Union," and was 
therefore unlawful), enforced, 595 F.2d 808 (D.C. Cir. 1979). 
Indeed, even counsel for the Union conceded at oral argu-
ment that discrimination affecting access to contractual griev-
ance procedures would violate the NLRA.

 This case is really no different from a case in which a union 
discriminates between members and non-members in the 
processing of grievances under a collective bargaining agree-
ment. To be sure, the principal agreement between the 


UAW and Ford does not establish the appeal mechanism at 
issue as a step in the parties' contractual grievance proce-
dure. However, the cited letter of understanding allowing for 
the reinstatement of grievances effectively amends the princi-
pal agreement to allow an extra step in the grievance proce-
dure. Under Article 33, once a grievance is reinstated, the 
Union and Ford will resume processing of that grievance in 
accordance with the prescribed grievance/arbitration proce-
dures. In other words, the appeal mechanism provided for in 
the Union constitution merely represents an additional step in 
the process by which an employee has access to a favorable 
grievance disposition. And Ford is bound by agreement to 
accept any favorable disposition in the Union process, wheth-
er it agrees or not, thus affording an employee an appeal to 
arbitration that would otherwise be denied.

 At oral argument, Union counsel suggested that the Article 
33 appeal process should be exempt from scrutiny under 
s 8(b)(1)(A), because it emanates from the Union constitution, 
not from the UAW-Ford collective bargaining agreement. 
The flaw in this argument is obvious: Article 33 is not 
completely divorced from the parties' agreement, because 
Ford has embraced it in an enforceable letter of understand-
ing, which effectively modifies the principal agreement. An 
employee who prevails under Article 33 has clear rights 
under the parties' collective bargaining agreement to pursue 
his or her grievance claim to arbitration.

 The Union's alternative tack, to which it devotes the bulk of 
its brief to this court, fares no better than its first argument. 
The Union essentially contends that Kirby's thwarted appeal 
was nothing more than a statutory fair representation claim, 
because Kirby sought a finding that the Union unfairly 
represented him when it withdrew his grievance short of 
arbitration. See Brief of Petitioner at 10. The Union points 
out that, under its constitution, the applicable standard for 
reviewing members' challenges to "the representational fair-
ness of any withdrawal of a grievance ... mirrors the duty of 
fair representation standard as it has been elaborated by the 
federal courts." Id. at 5. The Union also asserts that, with 
respect to such statutory fair representation claims, the Un-

ion is not the exclusive representative of the employees it 
otherwise represents, for those employees may seek redress 
on their own from the Board, as Kirby did here, or the courts. 
See id. at 20. Relying primarily on National Treasury 
Employees Union v. FLRA, 800 F.2d 1165 (D.C. Cir. 1986), 
the Union concludes that "it is entirely proper for the Union 
to discriminate between members and non-members as to the 
resolution of such non-contractual, statutory claims." Brief of 
Petitioner at 19.

 The Union's argument, while clever, is analytically flawed 
in at least two important respects. First, merely because the 
Union purports to embrace the "duty of fair representation" 
standard in its private appeal process, it does not follow that 
the process becomes, or is even equivalent to, a public forum. 
The Union is surely free to import the statutory standard as a 
means of judging its own cases. See Constitution of the 
International Union, art. 33, s 4(i), reprinted in J.A. 119. It 
is also free, however, to use any other lawful standard it 
wishes. Indeed, the Union's appellate bodies may interpret 
the language of the constitutional standard in a manner that 
differs from judicial interpretations of the statutory standard. 
Cf. American Postal Workers Union, AFL-CIO v. United 
States Postal Serv., 789 F.2d 1, 6 (D.C. Cir. 1986) (declining 
to disturb arbitrator's construction of the Miranda standard 
in connection with collective bargaining requirement that 
employer comply with "applicable laws," because arbitrator's 
decision simply "reflected his interpretation of the contract").

 Second, even if the substantive standards employed in the 
private and public fora are the same, the remedies afforded 
are not coterminous. In a case of this sort, success in an 
Article 33 appeal principally results in reinstatement of an 
employee's grievance and another chance to pursue his or her 
grievance claim. On the other hand, "[t]he appropriate reme-
dy for a breach of a union's duty of fair representation must 
vary with the circumstances of the particular breach." Vaca 
v. Sipes, 386 U.S. 171, 195 (1967). A court may impose 
monetary or injunctive relief solely against a union. Or, in 
the case of a "hybrid" breach of contract/duty of fair repre-
sentation suit against an employer and a union under s 301 of 


the Labor Management Relations Act, 29 U.S.C. s 185 (1994), 
a court may issue an order compelling arbitration or resolving 
the merits of the underlying grievance. See Vaca, 386 U.S. at 
196; see also Bowen v. United States Postal Serv., 459 U.S. 
212, 223-24 (1983).

 In any event, we are unpersuaded by the Union's argu-
ments. At bottom, this case involves a Union rule that 
blatantly discriminates between members and non-members 
in the processing of grievances under the UAW-Ford con-
tractual grievance/arbitration procedures. There is no basis 
for this court to overturn the Board's determination that the 
disputed rule violates s 8(b)(1)(A) of the NLRA.

 III. Conclusion

 For the foregoing reasons, the Union's petition for review 
is denied and the Board's cross-petition for enforcement is 
granted.

 So ordered.