INTERNATIONAL UNION, UNITED AU-
TOMOBILE, AEROSPACE AND AGRI-
CULTURAL IMPLEMENT WORKERS
OF AMERICA, (UAW), Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 98–1252.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 1, 1999.

Decided Feb. 26, 1999.

Michael B. Nicholson argued the cause for
petitioner. With him on the brief was Leon-
ard R. Page.

Charles Donnelly, Supervisory Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were Linda Sher, Associate General Counsel, and John D. Burgoyne, Acting Deputy Associate General Counsel. David S. Habenstreit and Steven B. Goldstein, Attorneys, entered appearances.

Before: EDWARDS, Chief Judge, GINSBURG and TATEL, Circuit Judges.

Opinion for the Court filed by Chief Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Chief Judge:

This case presents a narrow question: Does a union commit an unfair labor practice by denying an employee, based solely on the employee's status as a non-union member, the right to appeal a decision not to pursue the employee's grievance to the final step of a contractual grievance procedure, where a successful appeal would result in reinstatement of the employee's grievance?

The instant dispute arose in connection with the representation afforded Jerry V. Kirby by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW" or "Union") with respect to Kirby's employment at Ford Motor Company. Kirby was discharged by Ford for alleged misconduct; a grievance was then filed on his behalf under the UAW–Ford collective bargaining agreement. Subsequently, Union officials declined to pursue the grievance to arbitration, assertedly for lack of merit. Kirby sought to challenge the Union's decision through an appeal pursuant to an internal Union review process. Ford has an agreement with the UAW providing that a grievance will be reinstated for further consideration under the parties' contractual grievance/arbitration procedures if it has been successfully appealed in the internal union process. Nonetheless, the UAW refused to process Kirby's appeal solely because, at the time when it was raised, Kirby was no longer a member of the Union.

Kirby then filed an unfair labor practice charge with the National Labor Relations Board ("NLRB" or "Board"). The Board determined that the Union's refusal to allow Kirby to pursue an appeal, based solely on Kirby's membership status, violated § 8(b)(1)(A) of the National Labor Relations Act ("NLRA" or "Act"). The Union now petitions for review of the NLRB's order and the Board cross-petitions for enforcement of that order.

This case appears to raise an issue of first impression. However, the question at hand is not difficult and the Board's judgment is eminently reasonable, thus warranting enforcement. On the facts here, it is clear that the Union's purportedly "internal" appeal process effectively establishes an additional step in the UAW–Ford contractual grievance procedure. Because Ford has agreed that a successful appeal to the Union will result in reinstatement of an employee's grievance, access to the appeal process may directly affect an employee's job status, by supplying the last available channel to keep a grievance alive in the hope of a favorable resolution. Under these circumstances, the Board reasonably concluded that availability of this process on a members-only basis unlawfully restrains and coerces employees under § 7 of the Act.

## I. BACKGROUND

### A. The Facts

The relevant facts are essentially undisputed. Jerry Kirby began his employment with Ford in 1977. On March 31, 1994, Ford discharged Kirby, assertedly for "being under the influence of alcohol, absenteeism and threatening management." Summary Report of William C. Schaub, Jr., NLRB Regional Director (Feb. 13, 1996) ("Summary Report"), *reprinted in* Joint Appendix ("J.A.") 68. The local representative of the UAW, the designated collective bargaining agent for employees at Ford, immediately filed a grievance with the company on Kirby's behalf.

Pursuant to the collective bargaining agreement between the UAW and Ford, the processing of an employee grievance follows a four-step procedure. *See* Agreements Between UAW and Ford Motor Company (Sept. 15, 1993), *reprinted in* J.A. 181–93.

The first three steps, with increasing degrees of formality, involve processes for dispute resolution at the company level. *See id.* at 182–85. If a grievance is not settled, withdrawn, or otherwise resolved in the first three steps, the National Ford Department of the International Union may appeal the matter to impartial, binding arbitration. *See id.* at 186.

Article 33 of the UAW constitution provides, *inter alia*, that a "member [of the Union] shall have the right under this Article to appeal any action ... or refusal to act" on the part of the Union. Constitution of the International Union, art. 33, § 1 (June 1995), *reprinted in* J.A. 114. Under this provision, if the Union opts not to pursue a *member's* grievance to arbitration, the affected employee may appeal that decision to the Union's appellate bodies for reconsideration. The Union and Ford have a "letter of understanding," pursuant to which the company has agreed that, following a successful Article 33 appeal, an employee's grievance will, at the Union's request, be reinstated at the same level in the grievance procedure at which it was originally settled or withdrawn. *See* Letter from Robert M. Middlekauff, Director, Ford Labor Relations Planning Office, to Ken Bannon, Vice President, International Union, UAW (Oct. 5, 1976), *reprinted in* J.A. 65–66. The letter explicitly provides that reinstatement under this agreement will not expose the company to liability for any back pay that accrued during the period from the original disposition to the reinstatement. *See id.* at 65.

On January 30, 1995, Kirby's grievance was denied at the third step of the contractual procedure. At that point, the Union's local representative notified Kirby that his grievance was being transferred to the International Union for possible appeal to arbitration. *See* Notice from UAW Local 36 to Kirby, *reprinted in* J.A. 50. On May 16, however, an International Union representative orally informed Kirby that his grievance would not be pursued to arbitration, assertedly for lack of merit. *See* Stipulation of Facts at 3, ¶ 12, *reprinted in* J.A. 47; *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL–CIO* (Mar. 31, 1998) ("NLRB Decision and Order"), *reprinted in* J.A. 200 n.1. This constituted the final resolution of Kirby's grievance.

On June 1, 1995, Kirby filed an appeal with the Union to contest the refusal to submit his grievance to arbitration. On June 26, the UAW's president wrote Kirby to acknowledge his appeal, *see* Letter from Stephen P. Yokich, UAW President, to Kirby (June 26, 1995), *reprinted in* J.A. 63, but on July 28, he again wrote Kirby, this time denying Kirby's right to appeal. *See* Letter from Yokich to Kirby (July 28, 1995), *reprinted in* J.A. 64. The president's letter stated that Article 33 of the UAW constitution grants a right of appeal to Union members only, and that Kirby was not entitled to invoke this procedure, because his membership had lapsed since his discharge. *See id.* The letter further explained that Article 16 of the UAW constitution provides that a Union member will retain member status for six months following a discharge, without any requirement of paying dues. However, the member must then notify the Union within the last ten days of that six-month period that he or she wishes to remain a member. Because Kirby had not availed himself of that procedure, he did "not have the status of a member to make an appeal." *Id.* Prior to receiving this letter, Kirby apparently was unaware that his membership had lapsed. *See* Transcript of Hearing Before Administrative Law Judge (Dec. 18, 1996) ("Tr.") at 29, *reprinted in* J.A. 35.

### B. Board Proceedings

On October 12, 1995, Kirby filed a charge with the NLRB, alleging that the Union's withdrawal of his discharge grievance violated its statutory duty to fairly represent him, and that its refusal to permit Kirby to appeal that decision based solely on his membership status constituted an unfair labor practice. Following an investigation, the Board's Regional Director declined to issue a complaint on Kirby's first claim, finding "insufficient evidence that [the Union] failed to properly represent [Kirby] in violation of [its] duty of fair representation regarding the processing of his discharge grievance." Summary Re-

port, *reprinted in* J.A. 67–68. However, the Regional Director determined that the "portion of the charge that involve[d] the [Union's] refusal to consider [Kirby's] appeal ... because [he was] no longer a member of the union remain[ed] in full force and effect." *Id.* at 67.

On February 29, 1996, the Board's General Counsel issued a complaint, alleging that, by "refus[ing] to allow [Kirby] to appeal, pursuant to [the Union's] Constitution, a decision by [the Union] not to submit his discharge grievance to an umpire," and by basing that refusal on the fact that Kirby "was not a member of [the Union]," the Union "ha[d] been restraining and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act in violation of Section 8(b)(1)(A) of the Act." Complaint and Notice of Hearing at 2, ¶¶ 8–10 (Feb. 29, 1996), *reprinted in* J.A. 6. Subsequently, the matter was heard by an administrative law judge ("ALJ") on the sole question of whether the Union violated the NLRA by denying Kirby the right of appeal. *See* Tr. at 8–9, *reprinted in* J.A. 16–17. Because the only issue before the ALJ was the legality of the Union's refusal to hear Kirby's appeal, the ALJ refused to hear evidence regarding the merits of Kirby's grievance. *See id.* at 34, *reprinted in* J.A. 40.

At the conclusion of the hearing, the ALJ held that the Union had violated § 8(b)(1)(A) of the Act by denying Kirby the right to appeal solely because of Kirby's non-member status. *See International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL–CIO* (Aug. 5, 1997) (ALJ Decision) at 4, *reprinted in* J.A. 195. The ALJ found that the availability of the Union's internal appeal process affects an individual's status as an employee by enhancing his or her chance to remain employed. *See id.* Therefore, in the ALJ's view,

> [t]he privilege accorded a member, namely the right to appeal an adverse decision, has the coercive effect on unaffiliated employees to join the union. Section 7 of the Act provides that employees shall have the right to join a union and the *right to refrain* from any such activity. It follows

that article 33 in the context of the grievance process contravenes the statutory labor policy inherent in Section 7 of the Act. This is particularly so because the grievance procedure is at the heart of labor policy.

*Id.* (citations and internal quotation marks omitted). Although acknowledging that the Union was not required to provide the internal appeal mechanism as an added benefit for those pursuing grievances under the contractual procedure, the ALJ nonetheless concluded that "the Act requires that if such an opportunity is provided it must be offered equally to everyone whom the [Union] represents." *Id.* Accordingly, the ALJ recommended that the Union be ordered to cease and desist from "[r]efusing to allow [Kirby] or any other non-member to appeal, pursuant to its constitution, a decision not to submit the discharge grievance to an umpire." *Id.* The ALJ also recommended that the Union be ordered affirmatively to "[r]evise or interpret article 33 of its constitution so as to permit nonmembers the same rights of appeal as members in grievance matters, and allow [Kirby] to appeal the decision not to submit his discharge grievance to an umpire." *Id.*

The Board affirmed the ALJ's findings and conclusions, and adopted the recommended order with one important modification. *See* NLRB Decision and Order, *reprinted in* J.A. 200. In particular, the Board made it clear that its holding was limited to a situation, as with the UAW and Ford, in which the employer agrees that any successful appeal in the Union process will result in reinstatement of an employee's grievance under the parties' contractual grievance/arbitration procedures. The Board did not address the legality of a "members-only" internal union appeal process that does not implicate the employer or the employee's job status. *See id.* at 1–2, *reprinted in* J.A. 200–01.

## II. ANALYSIS

There is no dispute here that the Union denied Kirby the right of appeal under its constitution for one reason and one reason alone: Kirby was not a member of the Union. There is also no dispute that, had the

Union permitted Kirby to appeal its decision, and had Kirby prevailed before the Union's appellate bodies, Ford would have reinstated Kirby's grievance, giving Kirby an opportunity to pursue his claim in arbitration. The question is whether, under these circumstances, the Union's policy of limiting access to its Article 33 appeal mechanism to only Union members constitutes an unfair labor practice.

██ We will "uphold the Board's determination unless it has 'acted arbitrarily or otherwise erred in applying established law to the facts at issue.'" *Pittsburgh Press Co. v. NLRB*, 977 F.2d 652, 654 (D.C.Cir.1992) (quoting *North Bay Dev. Disabilities Servs., Inc. v. NLRB*, 905 F.2d 476, 478 (D.C.Cir. 1990)). Likewise, we will "accord[ ] particular weight" to the Board's construction of the statute it is charged with administering. *Id.* at 655 (citing *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Bearing these principles in mind, we conclude that the Board reasonably interpreted and applied the NLRA in finding that the Union committed an unfair labor practice.

██ The key statutory provisions in this case are familiar. Section 7 of the NLRA guarantees employees, *inter alia,* "the right to ... form, join, or assist labor organizations ... and ... to refrain from any or all of such activities." 29 U.S.C. § 157 (1994). Section 8(b)(1)(A) of the Act, in turn, implements this guarantee, by making it an unfair labor practice for a union to "restrain or coerce" employees in the exercise of their § 7 rights. *Id.* § 158(b)(1)(A). However, § 8(b)(1)(A) also contains an important proviso, *i.e.,* that nothing in the section shall be construed to "impair the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." *Id.* These provisions are generally understood to protect the right of employees to participate in or refrain from organized union activities, while preserving the authority of unions to govern their internal affairs without running afoul of the Act. *See NLRB v. Allis–Chalmers Mfg. Co.,* 388 U.S. 175, 195, 87 S.Ct. 2001, 18 L.Ed.2d 1123

(1967). Therefore, a rule may be shielded from the Act's proscription if it "reflects a legitimate union interest, impairs no policy Congress has imbedded in the labor laws, and is reasonably enforced against members who are free to leave the Union and escape the rule." *Scofield v. NLRB*, 394 U.S. 423, 430, 89 S.Ct. 1154, 22 L.Ed.2d 385 (1969).

It is undisputed here that the union would have committed an unfair labor practice if, instead of denying non-members access to the Union appeal process, it had discriminated between members and non-members in the processing of grievances under the UAW–Ford collective bargaining agreement. *See Oil, Chem. and Atomic Workers Int'l Union, Local No. 5–114 v. Moody,* 295 N.L.R.B. 742, 1989 WL 224181 (1989) (holding that disparate treatment of non-union employee in connection with grievance procedure was unlawful); *cf. National Treasury Employees Union v. FLRA,* 721 F.2d 1402, 1406 (D.C.Cir.1983) (holding that union policy of furnishing only its members with legal counsel in connection with grievances under collective bargaining agreement violated union's duty of fair representation under Federal Service Labor–Management Relations Statute).

The coercive effect of such discrimination would be manifest, for as the designated collective bargaining agent for Ford employees, the Union has exclusive authority to press Kirby's grievance—on which his future job status depends—with the company. *See* Agreements Between UAW and Ford Motor Company (Sept. 15, 1993) at 44, *reprinted in* J.A. 182. Moreover, such discrimination would not be insulated from the Act's proscription, because it does not fall within the scope of internal Union affairs. Rather, contractual grievance procedures deal directly with employees' terms and conditions of employment, and these are hardly matters that are strictly "internal" union affairs. *See Branch 6000, Nat'l Ass'n of Letter Carriers v. Lauber,* 232 N.L.R.B. 263, 263, 1977 WL 9108 (1977) (finding that exclusion of non-members from a vote directly affecting their working conditions did not pertain to matters "exclusively within the internal domain of the Union," and was therefore unlawful), *en-*

*forced,* 595 F.2d 808 (D.C.Cir.1979). Indeed, even counsel for the Union conceded at oral argument that discrimination affecting access to contractual grievance procedures would violate the NLRA.

This case is really no different from a case in which a union discriminates between members and non-members in the processing of grievances under a collective bargaining agreement. To be sure, the principal agreement between the UAW and Ford does not establish the appeal mechanism at issue as a step in the parties' contractual grievance procedure. However, the cited letter of understanding allowing for the reinstatement of grievances effectively amends the principal agreement to allow an extra step in the grievance procedure. Under Article 33, once a grievance is reinstated, the Union and Ford will resume processing of that grievance in accordance with the prescribed grievance/arbitration procedures. In other words, the appeal mechanism provided for in the Union constitution merely represents an additional step in the process by which an employee has access to a favorable grievance disposition. And Ford is bound by agreement to accept any favorable disposition in the Union process, whether it agrees or not, thus affording an employee an appeal to arbitration that would otherwise be denied.

At oral argument, Union counsel suggested that the Article 33 appeal process should be exempt from scrutiny under § 8(b)(1)(A), because it emanates from the Union constitution, not from the UAW–Ford collective bargaining agreement. The flaw in this argument is obvious: Article 33 is not completely divorced from the parties' agreement, because Ford has embraced it in an enforceable letter of understanding, which effectively modifies the principal agreement. An employee who prevails under Article 33 has clear rights under the parties' collective bargaining agreement to pursue his or her grievance claim to arbitration.

The Union's alternative tack, to which it devotes the bulk of its brief to this court, fares no better than its first argument. The Union essentially contends that Kirby's thwarted appeal was nothing more than a statutory fair representation claim, because Kirby sought a finding that the Union unfairly represented him when it withdrew his grievance short of arbitration. *See* Brief of Petitioner at 10. The Union points out that, under its constitution, the applicable standard for reviewing members' challenges to "the representational fairness of any withdrawal of a grievance ... mirrors the duty of fair representation standard as it has been elaborated by the federal courts." *Id.* at 5. The Union also asserts that, with respect to such statutory fair representation claims, the Union is not the exclusive representative of the employees it otherwise represents, for those employees may seek redress on their own from the Board, as Kirby did here, or the courts. *See id.* at 20. Relying primarily on *National Treasury Employees Union v. FLRA,* 800 F.2d 1165 (D.C.Cir.1986), the Union concludes that "it is entirely proper for the Union to discriminate between members and non-members as to the resolution of such non-contractual, statutory claims." Brief of Petitioner at 19.

■ The Union's argument, while clever, is analytically flawed in at least two important respects. First, merely because the Union purports to embrace the "duty of fair representation" standard in its private appeal process, it does not follow that the process becomes, or is even equivalent to, a public forum. The Union is surely free to import the statutory standard as a means of judging its own cases. *See* Constitution of the International Union, art. 33, § 4(i), *reprinted in* J.A. 119. It is also free, however, to use any other lawful standard it wishes. Indeed, the Union's appellate bodies may interpret the language of the constitutional standard in a manner that differs from judicial interpretations of the statutory standard. *Cf. American Postal Workers Union, AFL–CIO v. United States Postal Serv.,* 789 F.2d 1, 6 (D.C.Cir.1986) (declining to disturb arbitrator's construction of the *Miranda* standard in connection with collective bargaining requirement that employer comply with "applicable laws," because arbitrator's decision simply "reflected his interpretation of the contract").

■ Second, even if the substantive standards employed in the private and public fora are the same, the remedies afforded are

not coterminous. In a case of this sort, success in an Article 33 appeal principally results in reinstatement of an employee's grievance and another chance to pursue his or her grievance claim. On the other hand, "[t]he appropriate remedy for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach." *Vaca v. Sipes,* 386 U.S. 171, 195, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A court may impose monetary or injunctive relief solely against a union. Or, in the case of a "hybrid" breach of contract/duty of fair representation suit against an employer and a union under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1994), a court may issue an order compelling arbitration or resolving the merits of the underlying grievance. *See Vaca,* 386 U.S. at 196, 87 S.Ct. 903; *see also Bowen v. United States Postal Serv.,* 459 U.S. 212, 223–24, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

In any event, we are unpersuaded by the Union's arguments. At bottom, this case involves a Union rule that blatantly discriminates between members and non-members in the processing of grievances under the UAW–Ford contractual grievance/arbitration procedures. There is no basis for this court to overturn the Board's determination that the disputed rule violates § 8(b)(1)(A) of the NLRA.

### III. CONCLUSION

For the foregoing reasons, the Union's petition for review is denied and the Board's cross-petition for enforcement is granted.

*So ordered.*