**NORTH BAY DEVELOPMENT DISABILITIES SERVICES, INC. d/b/a North Bay Regional Center, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 89–1467.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 15, 1990.

Decided June 15, 1990.

Michael E. Avakian, North Springfield, Va., for petitioner.

Margaret G. Bezou, N.L.R.B., with whom Robert E. Allen, Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Peter Winkler, N.L.R.B., Washington, D.C., were on the brief, for respondent.

Before RUTH BADER GINSBURG, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The National Labor Relations Board held that a union does not commit an unfair labor practice when it declines an employer's demand for information about the union's finances in the course of bargaining over the amount of the agency fee that non-union employees will have to pay to the union. The Board held that the amount of an agency fee is not a mandatory subject of bargaining and does not become so by virtue of a union and an employer's agreement to negotiate over it, and that therefore, a union's refusal to provide information relevant to that issue does not implicate the NLRA. *Social Servs. Union, Local 535,* 287 NLRB No. 129 (1988). We find that there is sufficient support for the Board's decision, and accordingly, deny the employer's petition for review.

## I. Facts

The Social Services Union, Local 535, and the Employer, petitioner North Bay Development Disabilities Services, Inc., entered into a collective bargaining agreement (CBA) containing an agency shop clause that required each employee either to join the Union or to pay it an agency fee not in excess of that allowed by "the pertinent case law." The CBA also required the parties to negotiate over "the amount of Agency fee to be paid" and provided that if agreement were not reached by a specified date (long since passed) "the issue shall be submitted to an arbitrator."

In the ensuing negotiations, the Employer proposed that the agency fee be set at 20% of the periodic dues paid by Union members. The Employer also requested that, in the event that the Union did not agree to the 20% figure, it provide the Employer with "a detailed breakdown of all revenues and expenditures" of both the Local and the International for the current and the prior three years. The Employer maintained that this information was necessary in order for it and the Union jointly to determine what percentage of the members' dues are spent on representation, and thus the maximum that nonmembers could be charged for the Union's services.

When the Union refused to supply the information, the Employer invoked the arbitration clause of the CBA. The Employer has since adhered to its demand for the information on the ground that it is necessary to the presentation of its case before the arbitrator. The Employer also filed an

unfair labor practice charge with the Board, alleging that the Union's refusal to provide the requested information constituted a refusal to bargain in good faith, in violation of § 8(b)(3), 29 U.S.C. § 158(b)(3). The Regional Director of the NLRB issued a complaint, an ALJ ruled that the Union had not violated § 8(b)(3), and the Board (insofar as is relevant here) "affirm[ed] the judge's rulings, findings, and conclusions and ... adopt[ed] the recommended Order." In so doing, the Board explained

> that the amount of agency fees [sic] is a nonmandatory subject of bargaining and that it is not transformed into a mandatory subject by virtue of the parties' agreement to bargain concerning it. Inasmuch as the duty to provide information is coextensive with the statutory duty to bargain concerning mandatory subjects, [the Union] had no duty to provide information requested here.

287 NLRB at 129 n. 1.

The Employer petitions for review. It argues that the Board erred insofar as it held that the amount of an agency fee is not a mandatory subject of bargaining, and that even if the amount of such a fee is only a permissive subject of bargaining, the Employer is entitled to the information it requested if it is relevant "to bargaining, to the contract or to the parties' pending arbitration."

## II. Analysis

Whether a matter is within the realm of "terms and conditions of employment," NLRA § 8(d), 29 U.S.C. § 158(d), and is therefore a mandatory subject of bargaining, "is a matter concerning which the Board has special expertise." Our review is concomitantly narrow. We will uphold the Board's decision as long as it is "reasonably defensible." *Ford Motor Co. v. NLRB,* 441 U.S. 488, 495–97, 99 S.Ct. 1842, 1848–49, 60 L.Ed.2d 420 (1979); *see Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984) ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). We will disturb the Board's determination only if its factual findings are not supported by substantial evidence or it has "acted arbitrarily or otherwise erred in applying established law to the facts at issue." *United Food & Commercial Workers Int'l Union, Local 150–A v. NLRB,* 880 F.2d 1422, 1428–29 (D.C.Cir.1989).

Here we find no basis for overturning the Board's conclusion that the amount of an agency fee is not a mandatory subject of bargaining. The Board reasonably construed the obligation to bargain in light of the limitation found in the proviso to § 8(b)(1)(A), which protects "the right of a labor organization to prescribe its own rules with respect to the acquisition or retention of membership therein." That proviso has previously led the Board to the position that "the fees [that a union] imposes are subject to the scrutiny of the Board only in limited situations," *Metal Workers' Alliance, Inc.,* 172 NLRB 815, 816 (1968). The ALJ aptly described such situations as those in which the union's "enforcement [of a fee requirement] affects employment status," and this is not a case of that character.

The line between the internal affairs of a union, shielded from Board regulation by § 8(b)(1)(A), and the "terms and conditions of employment," as to which the Board enforces the obligation to bargain, is not always clear. *U.O.P. Norplex, Div. of Universal Oil Prods. Co. v. NLRB,* 445 F.2d 155, 157 (7th Cir.1971) (withdrawal of fines union imposed upon non-strikers not a mandatory subject because it "primarily involv[es] the relations between the employee and his union, although [it is] of some interest to the employer"). It is clear enough, however, that the amount of an agency fee concerns primarily the relationship between the union and the non-member employees; it is not "an aspect of the relationship between the employer and employees," which strongly suggests that it is not a mandatory subject of bargaining between a union and an employer. *Allied Chem. & Alkali Workers, Local Union No. 1 v. Pittsburgh Plate Glass Co.,* 404

U.S. 157, 178, 92 S.Ct. 383, 397, 30 L.Ed.2d 341 (1971) (*citing NLRB v. Wooster Div. of Borg-Warner Corp.*, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958)). It is for this reason that the mandatory character of the more general issue of union security (*i.e.*, whether employees will have either to join the union or to pay an agency fee), *see NLRB v. General Motors Corp.*, 373 U.S. 734, 743–45, 83 S.Ct. 1453, 1459–60, 10 L.Ed.2d 670 (1963), does not compel the conclusion that the amount of the agency fee is also a mandatory subject.

Contrary to the Employer's argument, the Supreme Court's decision in *Communications Workers v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988), does not compel the Board to a different result. The Court there held that, under the NLRA, a worker who chooses not to join a union cannot be required to pay to the union more than is necessary "to support union activities ... germane to collective bargaining, contract administration, and grievance adjustment." *Id.* at 745, 108 S.Ct. at 2648. The Court's decision has no direct bearing on this case, however, because it arose from a dispute between an employee and a union over the amount of the agency fee, and did not raise the issue of whether that amount is a subject of mandatory bargaining between a union and an employer. The inference that we draw from *Beck*, moreover, supports the Board's position: because an agency fee must be based upon a union's representational expenses, it does not make sense to force a union to bargain with an employer over the amount of the fee, lest the resulting figure reflect the parties' relative bargaining strengths rather than the amount chargeable by some objective standard—presumably one based, like a public utility ratemaking decision, upon experience in the recent past. *See, e.g., Price v. International Union, UAW*, 722 F.Supp. 933, 937–42 (D.Conn.1989) (upholding union's method of calculating chargeable fees based upon major categories of expenditures in its financial statements, which "closely track[ed] guidelines established in a recent internal NLRB memorandum (Memorandum GC 88–14, Guidelines Concerning *CWA v. Beck*, NLRB Office of the General Counsel, Nov. 15, 1988")). Indeed, the practical effect of such enforced bargaining could well be to require a union to negotiate with an employer the amount that it will devote to representation of employees in the future, *i.e.*, during the term of the contract, which is surely an internal union matter of no proper concern to the employer.

The Employer in this case voices the concern that it might be charged with an unfair labor practice if it withholds an excessive fee from an employee's paycheck, or fires an employee who does not authorize such withholding. This apprehension is at best premature and appears also to be unfounded. If an employee were to object to the amount of the fee to be withheld—a feature notably absent from this case—and were to refuse to authorize the deduction, it appears that, unless the Employer had reason to believe that the fee was unlawful, it would commit no unfair labor practice if, as required by the CBA, it dismissed the employee at the Union's request. *See H.C. Macaulay Foundry Co. v. NLRB*, 553 F.2d 1198, 1201–02 (9th Cir.1977); *see also Helmsley-Spear, Inc.*, 275 NLRB 262, 262 n. 1, 268 (1985).

The Board has not had occasion, since the decision in *Beck*, to address the means by which an employee may properly challenge the level of an agency fee. (The non-union employees in *Beck* successfully sued their union in federal court, asserting that use of their agency fees for purposes other than representation violated the union's duty of fair representation.) It is surely within the Board's discretion, however, to conclude that the appropriate mechanism is not for an employer, in bargaining with a union, to appoint itself the representative of some hypothetical non-union employees who may object to the amount of the agency fee set by the union.

Our conclusion that the Board reasonably determined that the amount of a union's agency fee is not a mandatory subject of bargaining dooms the whole of petitioner's claim. The duty to bargain imposed by the Act is limited to the mandato-

ry subjects captured by the statutory litany of "wages, hours, and other terms and conditions of employment" in § 8(d). *See Borg-Warner,* 356 U.S. at 349, 78 S.Ct. at 722–23. As the Board held, a subject that is not mandatory does not become mandatory solely by reason of the parties' agreement to bargain over it or to submit it to arbitration. *See .Chemical Workers,* 404 U.S. at 187, 92 S.Ct. at 402 ("By once bargaining and agreeing on a permissive subject, the parties, naturally, do not make the subject a mandatory topic of future bargaining.").

Of course, an agreement to negotiate about a subject, particularly if it is part of a "trend of industrial practice," may be "relevant in construing the phrase 'terms and conditions of employment,'" *Ford Motor,* 441 U.S. at 499–500, 99 S.Ct. at 1850–51; even such a trend is not decisive, however, and here we have no indication that more than a single such agreement exists. Although courts do, on occasion, refer to parties' contractual obligations when considering whether one party has committed an unfair labor practice by refusing to bargain or to submit an issue to arbitration, petitioner points to no such case involving a non-mandatory subject. Thus, it is of no moment whether the Union violated the CBA by failing, as alleged, to provide information relevant to negotiation or arbitration of the agency fee issue (a contract question upon which we, like the Board, express no opinion); the Union's refusal to provide the requested information simply does not implicate the statute. *Chemical Workers,* 404 U.S. at 176 n. 17, 92 S.Ct. at 396 n. 17.

## III. Conclusion

The Board was reasonable in interpreting the NLRA not to make the amount of the agency fee that a Union charges non-members a mandatory subject of bargaining. And since a non-mandatory subject does not become mandatory by virtue of the parties' agreement to negotiate or to arbitrate the issue, the Union did not commit an unfair labor practice by refusing to supply information relevant to that subject. The petition for review is therefore

*Denied.*