PHT, INC., d/b/a **Polynesian Hospitality Tours, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 89–1752.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 25, 1990.

Decided Dec. 7, 1990.

Ronald Y.K. Leong, with whom Frederick R. Troncone, Honolulu, Hawaii, was on the brief, for petitioner.

Robert F. Mace, Attorney, N.L.R.B., with whom Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Peter Winkler, Supervisory Atty., N.L.R.B., Washington, D.C., were on the brief, for respondent.

Before WALD, Chief Judge; MIKVA and RUTH BADER GINSBURG, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Petitioner PHT, Inc. ("PHT" or the "Company") seeks review of a National Labor Relations Board (the "Board") decision holding that PHT violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 158(a)(1), 158(a)(3) (1988), and ordering it to reinstate discharged employees. *See PHT, Inc. d/b/a Polynesian Hospitality Tours*, 297 N.L.R.B. 30 (1989). PHT objects primarily to the Board's finding that the employee work stoppage at issue here constituted protected activity under the Act, and also contests several other Board findings. We conclude that the Board's decision is supported by substantial evidence on all counts; accordingly, we deny the petition for review and enforce the Board's order.

## I.

PHT provides ground transportation for tours and passenger transfers to and from airports and hotels in the Honolulu, Hawaii area. During the fall of 1986, employees expressed dissatisfaction with a variety of working conditions, including starting times, daily hours, weekend days off, uniforms, and the condition of the equipment. One of the drivers' primary complaints was that Gloria Sylva, PHT's Operations Manager, unfairly assigned the daily "runs," often on the basis of favoritism. Employee representatives presented these concerns to, and met with, company management on several occasions.

In late October, the Hawaii Teamsters and Allied Workers, Local 996 (the "Union") began an organizational campaign at the Company, having failed in a similar effort the year before. Shortly after the Union filed its representation petition with the Board, Ms. Sylva questioned several employees about their union activities. The Company also suspended a supervisor-dispatcher who actively supported the Union, and issued a "letter of counseling" to another employee, both actions taken for alleged violations of PHT's "no solicitation" rule. The Union subsequently filed an unfair labor practice charge against the Company on behalf of the suspended employee.

PHT employees engaged in a work stoppage beginning on November 10. With the exception of the first morning, the employees carried signs throughout protesting that the Company was "unfair" and that a labor dispute existed between the Company and the Union. On several different occasions, the employees shouted remarks about and to Ms. Sylva, some quite offen-

sive, and others calling for her removal. On November 17, PHT sent discharge letters to the protesting employees, confirming earlier statements that they would be terminated if they did not return to work. The Union subsequently filed unfair labor practice charges against PHT, and the General Counsel issued a complaint.

After some twenty days of hearings, the administrative law judge (ALJ) issued a decision concluding that PHT had violated sections 8(a)(1) (interference with employees' protected rights) and 8(a)(3) (discrimination against union activity) of the Act, 29 U.S.C. §§ 158(a)(1), 158(a)(3), prior to and during the work stoppage. Specifically, the ALJ found that the employees had engaged in protected concerted activity during their work stoppage, and that the Company had therefore unlawfully discharged them. The ALJ also found that the Company violated the Act by interrogating employees, discriminatorily enforcing its "no solicitation" rule, and inducing employees to abandon their protest. On the basis of those findings, the ALJ ordered the Company to cease and desist from the unfair labor practices, and to offer immediate and unconditional reinstatement to the discharged employees. The Board in turn adopted the ALJ's decision and order, modifying them only insofar as it found additional violations of the Act and concluded that the ALJ had mischaracterized an employee as a supervisor.

## II.

The Company's primary challenge is to the Board's finding that the employee work stoppage was protected concerted activity under section 7 of the Act. Section 7 guarantees employees the right to engage in union activity, as well as "other concerted activities for the purpose of ... mutual aid or protection." 29 U.S.C. § 157. Employee protests to improve working conditions have long been held protected activity, *see* *NLRB v. Washington Aluminum Co.*, 370 U.S. 9, 17, 82 S.Ct. 1099, 1104, 8 L.Ed.2d 298 (1962), as have protests against an employer's unfair labor practices. *See* *Mastro Plastics Corp. v. NLRB*, 350 U.S.

270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956). Section 8(a)(1) implements the guarantees of section 7 by making it an unfair labor practice for an employer "to interfere with, restrain, or coerce" employees exercising those protected rights. 29 U.S.C. § 158(a)(1). *See* *Teamsters Local Union No. 171 v. NLRB*, 863 F.2d 946, 952 (D.C.Cir.1988). In those cases where the employer's actions are motivated by anti-union animus, section 8(a)(3) of the Act is also implicated. 29 U.S.C. § 158(a)(3).

PHT argues that the real objective of the employees' work stoppage was Ms. Sylva's removal, and that section 7 does not protect employee protests concerning the composition of management personnel. Suggesting, moreover, that the employees sought Ms. Sylva's removal on account of her gender, PHT argues that section 7 does not protect protests that are discriminatory in motive. Hence, PHT claims, it lawfully discharged the protesting employees.

In examining PHT's claims, we are mindful that the Board's determinations may be disturbed only if "its factual findings are not supported by substantial evidence or it has acted arbitrarily or otherwise erred in applying established law to the facts at issue." *North Bay Development Disabilities Services, Inc. v. NLRB*, 905 F.2d 476, 478 (D.C.Cir.1990) (internal quotation omitted). We conclude that substantial evidence supports the Board's factual findings as to the objectives of the employee protest, and, consequently, we agree with the Board that the protest constituted protected activity.

The ALJ found that "there is ample evidence in this record to sustain a conclusion, which I make, that employees were engaged in union and/or protected concerted activities," *see* *PHT, Inc. v. Hawaii Teamsters and Allied Workers Local 996*, at 49 (ALJ October 27, 1988) (appended to 297 N.L.R.B. 30) (hereinafter "ALJ Opinion"), and went on to find that "[t]he employees were acting in concert to protest, and seek redress of, complaints about certain of their wages, hours and working conditions." ALJ Opinion at 50. As examples of other factors contributing to the protest,

the ALJ cited the employees' "perception that an unfair labor practice had been committed," and noted that "certain activities by management officials ... were regarded by employees as harassment." ALJ Opinion at 53–54.

The Board "affirm[ed] the judge's rulings, findings, and conclusions," noting its "agree[ment] with the judge, for all the reasons stated by him, that the work stoppage commenced by the employees on November 10, 1986, was protected by the Act." *PHT, Inc.*, 297 N.L.R.B. 30, at 1–2 & n. 2.

We believe that substantial evidence supports the Board's finding that the employees engaged in the stoppage to protest working conditions and perceived unfair labor practices committed by the Company. Accordingly, the Board correctly concluded that the work stoppage constituted protected concerted activity, and that PHT violated the Act in discharging the employees. We thus see no reason to reach, and hence express no opinion on, the section 7 status of protests relating to the selection, discharge, or replacement of supervisory personnel.

### III.

PHT challenges several other aspects of the Board's decision. Specifically, the Company contends that: (1) the work stoppage was nevertheless unprotected because (a) the employees violated section 8(b)(1)(B) of the Act, which makes it unlawful for a union or its agents to interfere with an employer's selection of its bargaining representatives, 29 U.S.C. § 158(b)(1)(B), and (b) the employees failed to disclose the purpose of the stoppage; (2) the Board erred in finding PHT's washcrew co-chief to be an employee instead of a supervisor; and (3) the Board erred in holding that the Company violated sections 8(a)(1) and 8(a)(3) by interrogating employees, coercing them to abandon their protest, sending discharge letters, and discriminatorily enforcing its "no solicitation" policy. We conclude, however, that substantial evidence supports each of the Board's findings. *See* ALJ Opinion at 55–56 (interfer-

ence with employer representatives); ALJ Opinion at 34–35 & n. 26, 45, 49–50 (PHT knowledge of employee protest); *PHT, Inc.*, 297 N.L.R.B. 30, at 2–4 (supervisory status); ALJ Opinion at 42–44 (interrogations); ALJ Opinion at 44–46 (interrogation and coercion to abandon protest); 297 N.L.R.B. 30, at 1–2 n. 1, ALJ Opinion at 51 (discharge letters); ALJ Opinion at 47–49 (discriminatory enforcement of "no solicitation" policy).

### IV.

Finding substantial evidence to support the Board's decision, we deny the petition for review and enforce the Board's order.

*It is so ordered.*