**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000605
18-AUG-2022
09:56 AM
Dkt. 75 MO**

NO. CAAP-17-0000605

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

IN THE MATTER OF

HAWAII STATE TEACHERS ASSOCIATION,
Complainant-Appellant-Appellant,
and
BOARD OF EDUCATION, DEPARTMENT OF EDUCATION,
STATE OF HAWAII; PATRICIA HAMAMOTO, SUPERINTENDENT,
DEPARTMENT OF EDUCATION, STATE OF HAWAII;
AND SUSAN H. KITSU, DEPARTMENT OF EDUCATION,
STATE OF HAWAII, Respondents-Appellees-Appellees,
and
HAWAII LABOR RELATIONS BOARD, KERRY KOMATSUBARA,
SESNITA A.D. MOEPONO, AND J.N. MUSTO,
Agency-Appellees-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(Civil No. 1CC161001878)

**MEMORANDUM OPINION**
(By:  Leonard, Presiding Judge and Hiraoka, J. and Kubota,
Circuit Court J. (in place of Ginoza, Chief Judge, Wadsworth
and Nakasone, JJ., recused))

This appeal involves Hawaii Revised Statutes (**HRS**)
§ 89-9.  The statute deals with collective bargaining in public
employment.  Complainant-Appellant-Appellant Hawaii State
Teachers Association (**HSTA**) contends that Respondents-Appellees-

Appellees Hawai'i State Board of Education (**BOE**)[1] and the State of Hawai'i Department of Education (**DOE**) adopted a policy and approved rules and a plan to implement the policy without negotiating terms with HSTA. We hold that BOE and DOE were not required to negotiate with HSTA over terms of the policy, rules, or implementation plan because: they did not change HSTA's collective bargaining agreement (**CBA**); they were specifically subject to the terms of the CBA; and they were within DOE's management rights. Accordingly, we affirm the **Judgment** entered by the Circuit Court of the First Circuit on July 14, 2017,[2] which affirmed **Decision No. 484** of Agency-Appellee-Appellee the Hawaii Labor Relations Board (**HLRB**).

### BACKGROUND

HRS Chapter 89 deals with collective bargaining in public employment. HRS § 89-9 (Supp. 2007) sets "the scope of topics subject to mandatory bargaining." Univ. of Haw. Pro. Assembly v. Tomasu, 79 Hawai'i 154, 160, 900 P.2d 161, 167 (1995). The statute provided,[3] in relevant part:

> (a)  The employer and the exclusive representative shall . . . *negotiate* in good faith with respect to wages, hours, . . . and other *terms and conditions of employment* that are subject to collective bargaining and *that are to be embodied in a written agreement as specified in section 89-10*, but such obligation does not compel either party to agree to a proposal or make a concession . . . [.]
>
> . . . .
>
> (c)  Except as otherwise provided in this chapter, all *matters affecting employee relations*, including those that are, or may be, the subject of a *rule adopted by the employer* or any director, shall be subject to *consultation* with the exclusive representatives of the employees concerned. The employer shall make every reasonable effort to *consult* with exclusive representatives and *consider* their

---

[1]  BOE formulates policy for the state's public school system. Haw. Const. art. X, section 3.

[2]  The Honorable Rhonda A. Nishimura presided.

[3]  HRS § 89-9 has been amended several times since the HSTA filed the prohibited practice complaint that is the subject of this appeal; we analyze the version of the statute in effect when the HLRB proceeding was initiated.

input, along with the input of other affected parties, prior to effecting changes in any major policy affecting employee relations.

(d) . . . The employer and the exclusive representative shall not agree to any proposal that would . . . interfere with the rights and obligations of a public employer to:

(1) Direct employees;

(2) Determine qualifications, standards for work, and the nature and contents of examinations;

(3) Hire, promote, transfer, assign, and retain employees in positions;

(4) Suspend, demote, discharge, or take other disciplinary action against employees for proper cause;

(5) Relieve an employee from duties because of lack of work or other legitimate reason;

(6) Maintain efficiency and productivity, including maximizing the use of advanced technology, in government operations;

(7) Determine methods, means, and personnel by which the employer's operations are to be conducted; and

(8) Take such actions as may be necessary to carry out the missions of the employer in cases of emergencies.

This subsection shall not . . . preclude negotiations over the procedures and criteria on promotions, transfers, assignments, demotions, layoffs, suspensions, terminations, discharges, or other disciplinary actions as a ***permissive subject*** of bargaining ***during collective bargaining negotiations***[.]

(Bold italics added.)

HSTA is the collective bargaining representative for persons employed by DOE in bargaining unit 5.[4]  Under HRS § 89-9(a), DOE was required to "negotiate" with HSTA about "terms and conditions of employment" of teachers "to be embodied in a written agreement[.]"  Under HRS § 89-9(c), DOE was required to "consult" with HSTA and "consider" HSTA's "input" before adopting a "rule" "affecting employee relations."  Under HRS § 89-9(d),

---

[4]     Bargaining unit 5 consists of "[t]eachers and other personnel of the department of education under the same pay schedule[.]"  HRS § 89-6(a)(5).

"promotions, transfers, assignments, demotions, layoffs, suspensions, terminations, discharges, or other disciplinary actions" were DOE's management rights, the "procedures and criteria" for which could be subjects for collective bargaining negotiations.

On November 5, 2007, the BOE's Committee on Special Programs recommended adoption of a policy prohibiting the harassment and bullying of, and discrimination against, students by DOE employees. The committee explained:

> Federal law requires that any educational entity that receives federal assistance establish and adopt grievance procedures for complaints of discrimination. [Proposed] Board Policy 4211 would keep the Department of Education (Department) in compliance with federal law as the Department receives federal financial assistance. Additionally, there were recommendations from the Superintendent's Safe Schools Community Advisory Committee that recommended a strong policy against bullying and harassment.

By letter dated November 7, 2007, DOE sent the proposed policy to HSTA "for consult and confer."[5] DOE explained:

> This policy was developed pursuant to recommendation from the Safe Schools Community Advisory Committee. This Committee was comprised of community leaders and government stakeholders who made recommendations on how to improve safety in Hawaii schools. One of the key recommendations was to adopt and implement a policy against harassment, bullying and discrimination by staff against students.
>
> The policy includes federal law requirements under Title VI of the Civil Rights Act of 1964, and as amended by the Civil Rights Act of 1991, and Title IX of the Education Amendments of 1972, also known as the Patsy T. Mink Equal Opportunity in Education Act.
>
> The rationale for the proposed policy is to ensure that the DOE formalizes its position on anti-harassment, anti-bullying, and anti-discrimination against students. This policy will apply to all DOE employees.

DOE requested a response by December 10, 2007.

---

[5] DOE sent similar letters to the United Public Workers and the Hawaii Government Employees Association, which were the collective bargaining representatives for DOE employees in other bargaining units. Neither union demanded negotiation.

HSTA did not respond to DOE's letter. DOE scheduled meetings with HSTA during February 2008. HSTA canceled the meetings. On February 15, 2008, HSTA informed DOE by email that "HSTA has reservations on this policy." HSTA described its reservations in a letter to DOE dated February 20, 2008. HSTA's letter concluded:

> We welcome a policy that covers all administrators, teachers, staff and students within school communities in the workplace and their interactions with each other.
>
> As is the case for all policy and regulation proposals, the Association reserves its right to continue to comment as it evolves through implementation.

During a regular meeting on February 21, 2008, BOE approved Board Policy 4211, titled "Anti-Harassment, Anti-Bullying, and Anti-Discrimination Against Student(s) by Employees Policy" (**BP 4211**). BP 4211 stated (among other things):

> The Department of Education strictly prohibits discrimination, including harassment, by any employee against a student based on the following protected classes: race, color, national origin, sex, physical or mental disability, and/or religion. In addition to the above protected basis, the Department of Education strictly prohibits any form of harassment and/or bullying based on the following: gender identity and expression, socio-economic status, physical appearance and characteristic [sic], and sexual orientation.

By letter dated February 22, 2008, DOE informed HSTA:

> DOE will follow its normal course in developing regulations and procedures as it always does immediately after a policy is adopted. Normal disciplinary procedures will be followed *as outlined in the collective bargaining agreement* and other DOE rules, policies, and/or procedures.

(Bold italics added.)

On March 28, 2008, Respondent-Appellee-Appellee Patricia **Hamamoto,** then-Superintendent of the DOE, approved Standard Practice 0211 (**SP 0211**). The purpose of SP 0211 was "[t]o describe the regulations and procedures of [BP 4211]." Regarding discipline for violations, SP 0211 stated:

> Employee(s) who are found to have violated this policy, after an internal administrative investigation has been completed, may receive disciplinary action as deemed appropriate by an appropriate administrator. Such action will be taken in accordance with DOE policies, regulations, rules, ***collective bargaining agreements***, and other laws, rules, and regulations.

(Bold italics added.)

Also on March 28, 2008, Hamamoto approved the "Implementation Plan" for BP 4211 (**BP 4211 IP**). BP 4211 IP had been submitted by Respondent-Appellee-Appellee Susan H. **Kitsu**, then-Director of DOE's Civil Rights Compliance Office. The purpose of BP 4211 IP was "to ensure that there is no harassment, discrimination, and/or bullying of students by employees." Regarding discipline for violations, BP 4211 IP stated:

> Any complaints will be immediately investigated, and if any evidence corroborates an allegation, prompt action will be taken by the proper officials, up to termination and ***in line with provisions under collective bargaining agreements***, laws, rules, DOE policies and procedures, and other relevant authorities.

(Bold italics added.)

By letter dated May 12, 2008, HSTA demanded that DOE negotiate the contents of BP 4211, SP 0211, and BP 4211 IP. The letter stated (among other things):

> The aforementioned policy, standard practice documents, the proposed repeal of title 8, subtitle 2, chapter 41 of the DOE,[6] and implementation forms result in significant and material impacts on wages, hours, terms and conditions of employment of bargaining unit [5] employees and changes existing terms and conditions of employment.

> By letter dated May 21, 2008, the DOE responded:

> By letter dated November 7, 2007, the [DOE] sent a letter to [HSTA] submitting then Proposed Policy #4211 . . . for consult and confer. . . .

> . . . .

---

[6]     We take judicial notice, pursuant to Rule 201 of the Hawaii Rules of Evidence, that Hawaiʻi Administrative Rules (**HAR**) Title 8 ("Department of Education"), Subtitle 2 ("Education"), Part 1 ("Public School"), **Chapter 41** ("Civil Rights Policy and Complaint Procedure") was not repealed until August 15, 2019. The repeal of Chapter 41 is not at issue in this appeal.

> . . . A consult and confer meeting was scheduled for
> Tuesday, February 12, 2008[,] but was cancelled by HSTA.
>
> . . . .
>
> HSTA's request for negotiation was raised for the first time
> by letter dated May 12, 2008.  DOE maintains that the
> adoption and implementation of the policy is not a subject
> of negotiation.

## PROCEDURAL HISTORY

On May 27, 2008, HSTA filed a Prohibited Practice Complaint against DOE, BOE, Hamamoto, and Kitsu with HLRB under HRS Chapter 89.  HSTA alleged that DOE and BOE "unilaterally formulated, adopted, and/or implemented mid-term changes to the unit 5 collective bargaining agreement without negotiations or mutual consent of HSTA[.]"  HSTA claimed that BOE's refusal to negotiate was a prohibited practice that violated certain subsections of HRS § 89-13.  The statute provided, in relevant part:

> (a)  It shall be a prohibited practice for a public
> employer or its designated representative wilfully to:
>
> . . . .
>
> (5)  Refuse to bargain collectively in good faith
> with the exclusive representative as required in
> section 89-9; [or]
>
> . . . .
>
> (7)  Refuse or fail to comply with any provision of
> this chapter[.]

HRS § 89-13 (Supp. 2007).

HLRB issued Decision No. 484 on September 7, 2016.  The HLRB dismissed all of HSTA's charges against BOE, DOE, Hamamoto, and Kitsu.

On October 7, 2016, HSTA filed a notice of appeal from Decision No. 484 with the circuit court.  The circuit court heard oral arguments on June 30, 2017.  On July 14, 2017, the circuit court entered its "Order Affirming the Decision of the Hawaii Labor Relations Board, Case No. CE-05-667, Decision No. 484,

7

Dated September 7, 2016[.]"  The Judgment was also entered on July 14, 2017.

This secondary appeal followed.

## POINTS OF ERROR

HSTA raises four points of error:

"1.   The Circuit Court Wrongly Affirmed Board Decision No. 484 That Failed To Recognize That Policies Affecting Discipline And Discharge and Employees' Job Security Are Mandatory Subjects of Bargaining";

"2.   The Circuit Court Wrongly Affirmed Board Decision No. 484 Where The Board's Application of Management Rights Under Section 89-9(d), HRS, Was Contrary To The Collective Bargaining Rights Granted To Public Employees";

"3.   The Circuit Court Wrongly Affirmed Board Decision No. 484 That Failed To Recognize The DOE's Unilateral Changes and Failure to Provide Information Needed for Bargaining Were Prohibited Practices"; and

"4.   The Circuit Court Wrongly Affirmed Board Decision No. 484 As the Decision Failed To Recognize The Complaint Was Filed Within 90-Days of the DOE's Unilateral Changes and Refusal To Bargain."

## STANDARD OF REVIEW

Our review of a circuit court decision on appeal from an administrative agency determination is a secondary appeal; we must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) to the agency's decision.  Tomasu, 79 Hawaiʻi at 157, 900 P.2d at 164.  "[T]he agency's decision carries a presumption of validity and [the] appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences."  Id. (brackets omitted).

8

HRS § 91-14 (2012 & Supp. 2016), entitled "Judicial review of contested cases," provides in relevant part:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of its discretion under subsection (6)." Tomasu, 79 Hawaiʻi at 157, 900 P.2d at 164. An agency's findings of fact are reviewed for clear error. Id. An agency's conclusions of law are freely reviewable. Id.

## DISCUSSION

HSTA contends that BOE and DOE were required to negotiate the terms of BP 4211, SP 0211, and BP 4211 IP before they were adopted and approved, because "teachers are subject to discipline, discharge, and other adverse actions affecting their job security for violations of the 'bullying' work rules and standards[.]"

9

1.    **HLRB did not rule that policies affecting discipline, discharge, or job security could never be subjects for negotiation under HRS § 89-9(a).**

HSTA argues that HLRB "erred when it determined that department policies and work rules affecting discipline, discharge, and the job security of teachers did not constitute a 'mandatory subject' of collective bargaining, and that [DOE]'s refusal to negotiate as requested by HSTA did not constitute a breach of the duty to bargain."  The argument is incorrect.  HLRB in fact acknowledged: "To the extent that the adoption and implementation of a BP pursuant to a SP and IP ***may*** materially affect the discipline provisions of the CBA, bargainable topics ***may*** arise, and consequently, a BP, SP or IP ***may*** be the subject of mandatory bargaining."  (Bold italics added.)

HSTA contends that "[t]he facts were undisputed that the bullying policy were [sic] enforced through discipline, discharge, and other adverse personnel actions affecting the job security of teachers."  HLRB found, however, that HSTA failed to "specifically point[] out any provisions of BP 4211, SP[ ]0211 or BP 4211 IP which ***specifically conflicted with or changed*** any provisions of applicable DOE policies, rules, regulations, ***collective bargaining agreements***, and other laws, rules, and regulations concerning the discipline of its members then in effect (**Existing Rules**)" (bold italics added).

HSTA argues that BP 4211, SP 0211, and BP 4211 IP allowed teachers to be disciplined based on anonymous complaints, which was contrary to the CBA.  CBA Article X. provided, in relevant part:

> D.    Any serious complaint or any repeated minor complaint, including anonymous complaints concerning a teacher, shall be reported immediately to the teacher by the supervisor receiving the complaint.  The use of complaints and the filing of said complaints shall be covered by Article IX - Personnel Information.
>
> Any teacher against whom a serious complaint has been filed will have the opportunity to meet with the complainant(s).  At the teacher's request, the supervisor shall be present at such a meeting.  The

10

> supervisor shall call the complainant(s) for a meeting at a mutually acceptable time by the teacher, the complainant(s) and the supervisor.

HSTA cites no provision of BP 4211, SP 0211, or BP 4211 IP allowing DOE to discipline a teacher based on an anonymous complaint of discrimination, harassment, or bullying. We find none. The CBA requires that a teacher be allowed to meet with the complainants — which could include parents of a student — before discipline can be imposed. HLRB noted:

> In defending BP 4211, SP 0211 and BP 4211 IP, DOE repeatedly stated . . . that nothing in BP 421l, SP 021l or BP 421l IP conflicted with or changed the Existing Rules or employee rights in the context of disciplinary actions which may be taken by DOE. When HSTA first raised its general concerns regarding the effect of BP 4211 on disciplinary matters, [DOE] stated that "(n)ormal disciplinary procedures <u>will be followed as outlined in the collective bargaining agreement and other [DOE] rules, policies and/or procedures</u>.
>
> . . . .
>
> In effect, [DOE] stated to both [HLRB] and HSTA that BP 4211, SP 0211 and BP 4211 IP were not intended to, and in fact, ***did not amend or change the CBA*** or any of DOE's ***existing rules and regulations*** affecting teachers' discipline, except as the same may be subject to federal laws or regulations preempting state laws or regulations (which were not discussed in depth by the parties).
>
> Based on the foregoing and in holding [DOE] to [its] position and understanding of the nature and reach of each document, the [HLRB] finds that each of BP 4211, SP 0211 and BP 4211 IP is subject to all Existing Rules regarding teacher's discipline, except as the Existing Rules (1) may be revised or amended or otherwise changed in accordance with Hawaii law or (2) as the Existing Rules may have been or may be affected by federal law. Any disputes over the foregoing ***shall be resolved in accordance with the applicable grievance provisions of the CBA then in effect***.
>
> [HLRB] takes this position simply because both parties failed to provide [HLRB] with sufficient evidence to determine whether specific provisions of BP 4211, SP 0211 or BP 4211 IP did or did not violate either the CBA, any other Existing Rules or any provision of HRS Chapter 89.

(Underscoring in original, bold italics added.)

HLRB thus found that although DOE policies affecting teacher discipline, discharge, or job security ***may be*** mandatory

subjects of bargaining, BP 4211, SP 0211, and BP 4211 IP ***did not change*** the unit 5 CBA or any existing DOE rules or regulations affecting teachers:

> After reviewing the testimony of the witnesses, especially Kitsu, and the language of the CBA, BP 4211, SP 0211 and BP 4211 IP, [HLRB] finds that HSTA failed to meet its burden of showing specifically (1) why any of the provisions of BP 421l, SP 0211 or BP 4211 IP are vague or ambiguous or (2) how they amend or modify the provisions of the CBA. . . .
>
> Thus, since SP 0211 specifically provides that all investigations and any disciplinary actions regarding a violation of BP 4211 are subject to the Existing Rules (i.e., "DOE policies, regulations, rules, ***collective bargaining agreements***, and other laws, rules, and regulations"), there is no evidentiary support for HSTA's claims that BP 4211, SP 0211 or BP 4211 [IP] are in conflict with the requirements of the CBA.

(Bold italics added.) The HLRB's finding — that BP 4211, SP 0211, and BP 4211 IP did not effect mid-term changes to the unit 5 CBA — was supported by substantial evidence in the record and was not clearly erroneous. The HLRB's conclusion — that negotiation over the terms of BP 4211, SP 0211, and BP 4211 IP was not mandated by HRS § 89-9(a) — was supported by its finding and applied the correct rule of law. See Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007) (noting that a conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned).

> **2. HLRB did not apply DOE's HRS § 89-9(d) management rights contrary to the collective bargaining rights granted to HSTA members.**

HSTA next contends that HLRB applied DOE's HRS § 89-9(d) management rights contrary to teachers' HRS § 89-9(a) "collective bargaining rights."

In Tomasu the Hawaiʻi Supreme Court recognized that HRS § 89-9(a) and (d), "if read disjunctively, would either grant unlimited discretion to the managerial functions of the employer, see HRS § 89-9(d), or would allow management and employees to

12

submit all aspects of work to the bargaining table.  See HRS
§ 89-9(a)."  Tomasu, 79 Hawaiʻi at 160-61, 900 P.2d at 167-68
(footnotes omitted).  The supreme court then quoted from a Hawaii
Public Employment Relations Board decision:[7]

> Section 89-9(a), (c) and (d) must be considered in
> relationship to each other in determining the scope of
> bargaining.  For if Section 89-9(a) were considered
> disjunctively, on the one hand, all matters affecting the
> terms and conditions of employment would be referred to the
> bargaining table, regardless of employer rights.  On the
> other hand, Section 89-9(d), viewed in isolation, would
> preclude nearly every matter affecting terms and conditions
> of employment from the scope of bargaining.  Surely, neither
> interpretation was intended by the Legislature.
>
> Bearing in mind that the Legislature intended Chapter 89 to
> be a positive piece of legislation establishing guidelines
> for joint-decision making over matters of wages, hours and
> working conditions, we are of the opinion that *all matters*
> *affecting wages, hours and working conditions are negotiable*
> *and bargainable, subject only to the limitations set forth*
> *in Section 89-9(d).*

Id. at 161, 900 P.2d at 168 (quoting In re Haw. State Tchrs.
Ass'n and the Dep't of Educ., Decision No. 22, 1 HPERB 251
(1972)) (italics in original).

In Tomasu, the University of Hawaiʻi Board of Regents
(**BOR**) issued a policy statement in accordance with the federal
Drug-Free Workplace Act (**DFWA**).  The University of Hawaiʻi
Professional Assembly (**UHPA**)[8] filed a prohibited practice charge
against BOR with HLRB, claiming that the policy statement
"affected topics subject to mandatory bargaining and that the
BOR's refusal to bargain constituted an unfair labor practice."
Id. at 156, 900 P.2d at 163.  HLRB ruled that the policy
statement was not bargainable.  UHPA appealed.  The circuit court
affirmed.  UHPA appealed to the supreme court.

---

[7]    Hawaii Public Employment Relations Board was the former name for
HLRB.  See What Does the HLRB Do?, State of Hawaiʻi Labor Relations Board,
https://labor.hawaii.gov/hlrb/about-us/ (last visited August 11, 2022).

[8]    UHPA was the collective bargaining agent for all faculty members
of the University of Hawaiʻi (**UH**) system.  See About UHPA, University of
Hawaiʻi Professional Assembly, https://www.uhpa.org/about-uhpa (last visited
August 12, 2022).

The supreme court noted that the DFWA "mandates that, when an employee violates the drug enforcement policy, the employee must be duly sanctioned **_or must participate in a drug abuse assistance or rehabilitation program_**. The [DFWA] does not describe the exact procedure for these actions, leaving these details to the individual employers to fashion and implement."[9] Id. at 162, 900 P.2d at 169 (bold italics added). Because implementation of the policy statement would require unspecified discretionary action by UH upon violation by an employee:

> the employee [is] in an awkward position. The employee knows that certain actions will result in discipline because the federal statute mandates discipline, but the employee **_does not know what form the discipline will take_** because the policy statement has yet to be implemented by the employer. Thus, the employee clearly is subject to some form of disciplinary action, which definitely affects terms of employment and working conditions subject to mandatory bargaining under HRS § 89-9(a).

Id. at 163, 900 P.2d at 170 (bold italics added). Under those facts, the supreme court held that BOR was obligated to negotiate with UHPA over the policy statement.

By contrast, in this case HLRB found and concluded that HSTA failed to show that BP 4211, SP 0211, or BP 4211 IP conflicted with, or changed any provisions of, the teachers' CBA. BP 4211, SP 0211 and BP 4211 IP specified that any teacher discipline would be subject to the CBA, and HLRB held that any disputes over teacher discipline "shall be resolved in accordance with the applicable grievance provisions of the CBA then in effect." Thus, this case is more like United Public Workers v. Hanneman, 106 Hawaiʻi 359, 105 P.3d 236 (2005).

In Hanneman, the City and County of Honolulu unilaterally transferred several refuse collection employees (members of a bargaining unit represented by the United Public Workers (**UPW**)) from an overstaffed baseyard to an understaffed

---

[9] The Tomasu opinion does not specify whether the UHPA collective bargaining agreement in effect when UH adopted the policy statement contained provisions for faculty participation in drug abuse assistance or rehabilitation programs, but the decision implies it did not.

baseyard.  The transferred employees were those with the least seniority, as required by the UPW collective bargaining agreement.  Id. at 361, 105 P.3d at 238.  The City offered to consult with UPW about the transfers under HRS § 89-9(c).  UPW demanded negotiation under HRS § 89-9(a).  The City maintained that the transfers were a management right and not subject to negotiation, citing HRS § 89-9(d).

UPW filed a complaint with HLRB.  HLRB applied a balancing test and ruled that the City's management right to transfer did not supersede UPW's bargaining right because "the consequent disruption of seniority at both baseyards is likely to have a deleterious effect upon the exercise of bargained-for rights which are seniority-based."  Hanneman, 106 Hawaiʻi at 362, 105 P.3d at 239.  The City appealed.  The circuit court affirmed.  The City filed a secondary appeal.  The supreme court held that HLRB erred by applying a balancing test:

> The plain language of HRS § 89-9(d)[(3)] is clear and unambiguous that "[t]he employer and the exclusive representative shall not agree to any proposal . . . which would interfere with the rights and obligations of a public employer to . . . [h]ire, promote, transfer, assign, and retain employees in positions."  (Emphasis added). . . . Moreover, with respect to the balancing test employed by the HLRB, HRS § 89-9 does not expressly state or imply that an employer's right to transfer employees is subject to a balancing of interests.  Contrary to the HLRB's interpretation, our holding in Tomasu does not approve of the HLRB's balancing test.  Rather, we believe Tomasu stands for the proposition that, in reading HRS §§ 89-9(a), (c) and (d) together, parties are permitted and encouraged to negotiate all matters affecting wages, hours and conditions of employment *as long as the negotiations do not infringe upon an employer's management rights under section 89-9(d).*  In other words, the right to negotiate wages, hours and conditions of employment is *subject to*, not balanced against, management rights.

Id. at 365, 105 P.3d at 242 (underscoring in original, bold italics added).

Similarly, in this case the plain language of HRS §89-9(d)(4) makes HSTA's right to negotiate conditions of employment subject to DOE's right to "[s]uspend, demote, discharge, or take other disciplinary action against employees for proper cause[.]"

Thus, BOE's adoption of BP 4211, and DOE's implementation of SP 0211 and BP 4211 IP, all of which were subject to the existing unit 5 CBA, were an appropriate exercise of management rights under HRS § 89-9(d). BOE's and DOE's actions were not contrary to teachers' collective bargaining rights under HRS § 89-9(a). BP 4211, SP 0211, and BP 4211 IP were not "written agreement[s]" required to be negotiated under HRS § 89-9(a); rather, they were "rule[s]" "affecting employee relations," which were subject to "consultation" under HRS § 89-9(c). DOE complied with HRS § 89-9(c) by sending then-proposed BP 4211 to HSTA "for consult and confer."

### 3. HLRB correctly concluded that DOE's failure to provide information did not constitute a prohibited practice.

HSTA requested information from BOE and DOE in connection with its demand for negotiation. HSTA contends that HLRB erroneously failed to recognize that DOE's failure to provide the information was a prohibited practice.

HLRB found and concluded:

> . . . HSTA's request for information was based on its contention that BP 4211, SP 0211 and BP 4211 IP raised mandatory subjects of bargaining. There was no grievance pending and there were no ongoing collective bargaining negotiations extant at the time the demand for information was made. . . .
>
> . . . .
>
> Here, [HLRB] held that HSTA could not force [BOE and DOE] to bargain over BP 4211, SP 0211 or BP 4211 IP because they were the subject of the consult and confer requirement [of HRS § 89-9(c)] and not the negotiations requirement [of HRS § 89-9(a)]. There is no evidence to show that [BOE] agreed to enter into permissive negotiation regarding BP 4211, SP 0211 or BP 4211 IP. HSTA did not allege and did not pursue a breach of duty to consult claim. In the absence of a duty to bargain, breach of duty to consult or any other argument regarding the relevancy of the requested information other than in the context of mandatory bargaining, [BOE] had no obligation to produce the requested information.
>
> . . . .
>
> Based on the foregoing, the [HLRB] concludes that because the information request made in the [HSTA's] May 12,

16

> 2008 letter related to BP 4211, which is deemed to be non-mandatory subjects of bargaining [under HRS § 89-9(d)], [BOE] had no obligation to provide the requested information because the [HLRB]'s determination that BP 4211, SP 0211, and BP 4211 IP "are not a mandatory subject of bargaining dooms the whole of [HSTA's] claim."

(cleaned up) (quoting N. Bay Dev. Disabilities Servs., Inc. v. NLRB, 905 F.2d 476, 479 (D.C. Cir. 1990)). HLRB's findings were supported by substantial evidence, and its conclusions were supported by its findings and applied the correct rule of law. See Klink, 113 Hawaiʻi at 351, 152 P.3d at 523.

**4. HLRB's ruling that HSTA's claims based on BP 4211 were untimely, even if erroneous, was harmless.**

Finally, HSTA contends that HLRB erred by ruling that HSTA's claims relating to BP 4211 were untimely. We need not decide that issue because despite ruling that HSTA's claims relating to BP 4211 were untimely, HLRB decided HSTA's claims relating to BP 4211 on the merits. As explained above, HLRB's conclusion that BP 4211 was not subject to negotiation or mandatory bargaining was correct. Accordingly, the circuit court was not wrong to affirm HLRB Decision No. 484 on the merits.

**CONCLUSION**

For the foregoing reasons, the Judgment entered by the circuit court on July 14, 2017, is affirmed.

DATED: Honolulu, Hawaiʻi, August 18, 2022.

On the briefs:

Herbert R. Takahashi,
Rebecca L. Covert,
for Complainant-Appellant-
Appellant Hawaii State
Teachers Association.

James E. Halvorson,
Jeffrey A. Keating,
Deputy Attorneys General,
State of Hawaiʻi,
for Respondents-Appellees-
Appellees.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Peter K. Kubota
Circuit Court Judge